UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CASE NO.: 1:18-CV-12121

RL 900 PARK LLC, a Florida limited liability company,

      Plaintiff,

v.

SIMONE ENDER, INDIVIDUALLY AND AS THE EXECURTIX OF THE ESTATE OF PAUL ANTHONY ENDER; MONIQUE ENDER SILBERMAN; BRIGETTE LAING; DANUTA MARYIAK, AS GUARDIAN FOR EMELYE ENDER; JACK MANN; JOAN MANN; UNKNOWN TENANT IN POSSESSION #1; and UNKNOWN TENANT IN POSSESSION #2.

      Defendants.
-and-

CENTRAL PARK PARTNERS NY LLC,

      Intervenor-Defendant

_____

**<u>NOTICE OF FILING</u>**

PLEASE TAKE NOTICE that Plaintiff, RL 900 PARK, LLC, by and through its undersigned counsel, hereby gives notice of the filing of the following document:

1.      Deposition Transcript of Arthur Spitzer dated October 29, 2020.

Dated: New York, New York
November 9, 2020

Respectfully submitted,

**HABER LAW, P.A.**
*Counsel for Plaintiff*
251 NW 23 Street
Miami, FL 33127
Telephone No.: (305) 379-2400
Facsimile No.: (305) 379-1106


By: *s/* ROGER SLADE, ESQ.
New York Bar No.2253599
rslade@haber.law
cpla@haber.law


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 9th day of November 2020, a true and correct copy of

the foregoing document was served via electronic mail and/or U.S. mail on all counsel or parties

of record listed below:

| | |
|---|---|
| **VIA AUTOMATIC EMAILS GENERATED VIA ECF**<br>**Richard Klein, Esq.**<br>Romer Debbas LLP<br>275 Madison Avenue, Suite 801<br>New York, NY 10016<br>212-888-3100<br>rklein@romerdebbas.com | **VIA AUTOMATIC EMAILS GENERATED VIA ECF**<br>**Jason Louis Libou, Esq.**<br>Wachtel Missry LLP<br>One Dag Plaza<br>885 Second Avenue , 47th Floor<br>New York, NY 10017<br>jlibou@wmllp.com |
| **VIA AUTOMATIC EMAILS GENERATED VIA ECF**<br>Peter DeVries, Esq.<br>**pdevrieslaw@gmail.com** | **VIA AUTOMATIC EMAILS GENERATED VIA ECF**<br>**Val Edmund Wamser, Esq.**<br>88 Pine Street, 7th Floor<br>New York, NY 10005<br>212-220-3830<br>Vwamser@nicolettihornig.com |
| **VIA AUTOMATIC EMAILS GENERATED VIA ECF**<br>**Naomi Zeltser, Esq.** | **VIA U.S. MAIL**<br>**New York City Department Of Finance**<br>66 John Street, 13th Floor |

| Zeltser Law Group, PLLC<br>26 Court Street<br>Suite 1200<br>Brooklyn, New York 11242 | New York, New York 10038 |
|---|---|
| **<u>VIA U.S. MAIL</u>**<br>Brigette Laing<br>6738 E Rovey Avenue<br>Paradise Valley, AZ 85283 | **<u>VIA U.S. MAIL</u>**<br>Simone Ender<br>710 Park Avenue<br>Unit 4A<br>New York, NY 10021 |

Respectfully submitted,

**HABER LAW, P.A.**
*Counsel for Plaintiff*
251 NW 23 Street
Miami, FL  33127
Telephone No.: (305) 379-2400
Facsimile No.:  (305) 379-1106

By:  *s/ Roger Slade, Esq.*
        ROGER SLADE, ESQ.
        New York Bar No.2253599
        rslade@haber.law
        cpla@haber.law

RL 900 Park L.L.C.

vs.

Simone Ender

---

Deposition of:

Arthur Spitzer

October 29, 2020

*Vol 1*

---



PHIPPS REPORTING

*Raising the Bar!*

Arthur Spitzer
October 29, 2020

```
 1                UNITED STATES DISTRICT COURT

 2            SOUTHERN DISTRICT OF NEW YORK

 3

 4   RL 900 PARK LLC, a Florida      Case No.
     limited liability company,      1:18-CV-12121
 5                               )
                   Plaintiff,    )
 6                               )
             vs.                 )
 7                               )
     SIMONE ENDER, INDIVIDUALLY   )
 8   AND AS THE EXECUTRIX OF THE  )
     ESTATE OF PAUL ANTHONY       )
 9   ENDER; ARTHUR SPITZER;       )
     BRIGETTE LAING, DANUTA       )
10   MARYIAK, AS GUARDIAN FOR     )
     EMELYE ENDER; JACK MANN;     )
11   JOAN MANN; UNKNOWN TENANT IN )
     POSSESSION #1, and UNKNOWN   )
12   TENANT IN POSSESSION #2,     )
                                 )
13              Defendants.       )
     ----------------------------)
14

15

16          VIDEOCONFERENCE DEPOSITION OF

17                 ARTHUR SPITZER

18               New York, New York

19            Thursday, October 29, 2020

20

21

22

23

24   Reported by:
     TAMI H. TAKAHASHI, RPR, CSR
25   JOB NO. 161834
```

Arthur Spitzer
October 29, 2020

 1                    October 29, 2020

 2                    1:13 p.m.

 3

 4          Video Teleconference Deposition of

 5   ARTHUR SPITZER, held via Zoom remote video

 6   conferencing software in New York, New York,

 7   pursuant to Notice, before TAMI H. TAKAHASHI,

 8   a Registered Professional Reporter and Notary

 9   Public of the State of New York.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Arthur Spitzer
October 29, 2020

Page 3

```
 1   A P P E A R A N C E S:

 2   (All parties appearing remotely)

 3

 4   Representing the Plaintiff:

 5       HABER LAW, P.A.

 6              25 NW 23 Street

 7              Miami, Florida  33127

 8              305.379.2400

 9       BY:   ROGER SLADE, ESQ.

10              cpla@haber.law

11

12   Representing the Central Park Partners NY

13     LLC:

14       ZELTSER LAW GROUP, PLLC

15              26 Court Street, Suite 1200

16              Brooklyn, New York  11242

17              718.831.2529

18       BY:  NAOMI ZELTSER, ESQ.

19              naomi@zeltserlaw.com

20   - and -

21       KENNETH R. BERMAN, ESQ., of Counsel

22              70-20 Austin Street, Suite 109

23              Forest Hills, New York  11375

24              718.830.0700

25              k.berman.esq@live.com
```

Arthur Spitzer
October 29, 2020

Page 4

 1   A P P E A R A N C E S:

 2    (All parties appearing remotely)

 3

 4

 5   ALSO PRESENT:

 6              JULIE QUITTNER

 7              BRYAN MORJAIN

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Arthur Spitzer
October 29, 2020

Page 5

1   ----------------- I N D E X ----------------

2   WITNESS              EXAMINATION BY          PAGE

3   ARTHUR SPITZER    MR. SLADE                    7

4

5   ------------ INFORMATION REQUESTS -----------

6   DIRECTIONS:  13, 14, 44, 45, 57

7   RULINGS:  13

8   TO BE FURNISHED:  (None)

9   REQUESTS:  (None)

10  MOTIONS:  (None)

11  ------------------ EXHIBITS ----------------

12  (None)

13

14

15

16

17

18

19

20

21

22

23

24

25

Arthur Spitzer
October 29, 2020

Page 6

1          IT IS HEREBY STIPULATED AND AGREED

2    by and between the attorneys for the

3    respective parties herein, that filing

4    and sealing be and the same are hereby

5    waived.

6          IT IS FURTHER STIPULATED AND AGREED

7    that all objections, except as to the

8    form of the question, shall be reserved

9    to the time of the trial.

10          IT IS FURTHER STIPULATED AND AGREED

11   that the within deposition may be signed

12   and sworn to before any officer

13   authorized to administer an oath, with

14   the same force  and effect as if signed

15   and sworn to before the Court.

16

17

18

19                    -O-

20

21

22

23

24

25

Arthur Spitzer
October 29, 2020

Page 7

```
 1              STENOGRAPHIC REPORTER:  This is
 2        Tami Takahashi.  I'm a Registered
 3        Professional Reporter and New York State
 4        notary public.  This deposition is being
 5        held via videoconference.  The witness
 6        and I are not in the same room.  The
 7        witness will be sworn in remotely
 8        pursuant to National Emergency Section
 9        319 of the Public Health Service Act and
10        Notary Executive Order 202.7.  The
11        parties stipulate that the testimony is
12        being given as if the witness was sworn
13        in person.
14   A R T H U R   S P I T Z E R,   called as a
15        witness, having been duly sworn by a
16        Notary Public, was examined and testified
17        as follows:
18                   EXAMINATION
19   BY MR. SLADE:
20        Q.   Mr. Spitzer, good afternoon.  My
21   name is Roger Slade, and I represent the
22   plaintiff in this lawsuit.  I'm going to be
23   asking you some questions throughout the
24   course of this afternoon.
25              If you don't understand any of my
```

Arthur Spitzer
October 29, 2020

Page 8

```
 1    questions, please tell me and I'll try to

 2    clear them up so that you do understand.  Is

 3    that fair?

 4         A.   Yes.

 5         Q.   The court reporter can't take down

 6    words like "um-hum" or nods of the head, so

 7    you have to answer audibly.  Do you

 8    understand that?

 9         A.   Yes.

10         Q.   Okay.  Also try to let me finish my

11    question before you answer and try to allow

12    your attorney Mr. Berman to make an objection

13    if he wants before you answer to make life

14    easier for the court reporter and we have a

15    clear record.  Is that okay?

16         A.   Yes.

17              MR. SLADE:  Could you swear him in

18         again, please.  I'd like to swear the

19         witness in again one more time.  I think

20         that -- I was told there was an

21         interruption when I stepped away from

22         the camera.

23              (The witness was administered the

24         oath.)

25    BY MR. SLADE:
```

Arthur Spitzer
October 29, 2020

Page 9

1          Q.   Okay.  Mr. Spitzer, can you provide

2     a copy your driver's license?

3               MR. BERMAN:  I'm going to object.

4          What is the purpose of that?

5               MR. SLADE:  Because I want to make

6          sure that I have Mr. Spitzer.

7               MR. BERMAN:  Well, we will provide

8          a redacted copy of his driver's license.

9               MR. SLADE:  Well, I want to have

10         his drivers's license before I spend the

11         whole afternoon deposing him.  So I

12         won't make a copy of it.  I just want

13         him to show it to the court reporter and

14         to me.

15              MR. BERMAN:  That's fine.  That's

16         fine.

17              THE WITNESS:  I have a passport,

18         too.

19              MR. BERMAN:  No, no, no.  Driver's

20         license.  You give him what he asks for.

21              (Witness showing his driver's

22         license.)

23              MR. SLADE:  Okay.  Thank you very

24         much.

25    BY MR. SLADE:

1          Q.   Okay.  So, Mr. Spitzer, what is

2     your home address?

3          A.   ███████████████████████████ ,

4     New Jersey 08755.

5          Q.   And are you currently employed or

6     do you have a business?

7          A.   Yes.

8          Q.   What's your business address?

9          A.   1500 West Blancke Street, Linden,

10    New Jersey 07036.

11         Q.   And what business is it that you

12    are in?

13         A.   Real estate development.

14         Q.   Okay.  Are you an attorney, sir?

15         A.   No.

16         Q.   All right.

17              MR. BERMAN:  Roger, can you hold

18         for a second?

19              MR. SLADE:  I'm going to ask you

20         not to take phone calls during the

21         deposition.  Are you serious?

22              (Telephone interruption.)

23    BY MR. SLADE:

24         Q.   Mr. Spitzer --

25         A.   Yes.

Arthur Spitzer
October 29, 2020

1      Q.    -- do you know Naomi Zeltser?

2      A.    Yes.

3      Q.    Okay.  And how do you know her?

4      A.    She's my attorney.

5      Q.    When was the first time you met

6    her?

7      A.    Today.

8      Q.    Okay.  When was it that you

9    retained her services?

10      A.    My office retained her, I believe,

11    in February -- end of February or beginning

12    of March.  I don't recall the exact date.

13      Q.    What is the name of your business?

14      A.    Deutsch Equity.

15      Q.    Okay.  And what's your position

16    there?

17      A.    I'm a partner.

18      Q.    And what is your title?

19      A.    CEO.

20      Q.    Okay.  One second.

21            (Brief interruption.)

22    BY MR. SLADE:

23      Q.    And how long have you been in that

24    business, sir, in the real estate development

25    business?

Arthur Spitzer
October 29, 2020

Page 12

```
 1      A.   I've been in the real estate

 2  development business since around 2016, '15,

 3  maybe.

 4      Q.   So what did you do before that?

 5      A.   I had a different business, nothing

 6  related.

 7      Q.   Can you tell me what it was?

 8      A.   I sold closeouts, health and beauty

 9  products, that type of stuff.

10      Q.   Okay.  Did you graduate from

11  college?

12      A.   No.

13      Q.   Where did you go to high school?

14      A.   I went to -- it's called Yeshiva

15  Imreia Yosef.

16           STENOGRAPHIC REPORTER:  Can you

17      spell that, please.

18           THE WITNESS:  Yeshiva is

19      Y-E-S-H-I-V-A, Imreia is I-M-R-E-I-A,

20      and Yosef is Y-O-S-E-F.

21           STENOGRAPHIC REPORTER:  Thank you.

22  BY MR. SLADE:

23      Q.   Okay.  Sir, you're familiar with

24  the condominium unit that's the subject of

25  this lawsuit at 900 Park Avenue, correct?
```

Arthur Spitzer
October 29, 2020

Page 13

```
 1        A.    Somewhat familiar.
 2        Q.    Well, tell me everything you know
 3   about it, would you.
 4              MR. BERMAN:  Objection, Roger.
 5        That's an improper question.
 6   BY MR. SLADE:
 7        Q.    You can answer.
 8   DI       MR. BERMAN:  No, he can't.
 9              MR. SLADE:  I'm sorry?
10              MR. BERMAN:  No, he can't.  Ask
11        your questions.
12              MR. SLADE:  You're not allowing him
13        to answer that question?
14              MR. BERMAN:  I will not allow him
15        to answer that question.
16              MR. SLADE:  And the basis is what?
17              MR. BERMAN:  Because it's too
18        vague.  It's not broken down.  You have
19        to prepare your case better.
20   RL       MR. SLADE:  Okay.  Note it for the
21        record.  We'll take it up with the
22        judge.
23   BY MR. SLADE:
24        Q.    When did you first become aware of
25   the condominium unit located at 900 Park
```

Arthur Spitzer
October 29, 2020

Page 14

1   Avenue?

2        A.    In March, beginning of March.

3        **Q.    And how did you become aware of it?**

4        A.    My employee Mendy Goldstein told me

5   about this -- they were taking on this --

6   this piece of property.

7        **Q.    Okay.  What did you say to him and**

8   **what did he say to you?**

9        A.    Meaning?

10       **Q.    You don't understand what it means**

11  **to speak to somebody?**

12  DI       MR. BERMAN:  Objection.  Don't --

13       don't answer.

14            MR. SLADE:  Keep going, Mr. Berman.

15            MR. BERMAN:  It's argumentative.

16            MR. SLADE:  Mr. Berman, keep going,

17       keep instructing him not to answer.

18       Bring your checkbook.

19            MR. BERMAN:  You're being

20       argumentative.

21            MR. SLADE:  Bring your checkbook.

22            MR. BERMAN:  You want to argue with

23       me, fine.  That's -- you can waste your

24       whole day arguing with me, but you can't

25       be argumentative with the witness.

Arthur Spitzer
October 29, 2020

Page 15

 1              MR. SLADE:  Could you read the

 2         question back, please.

 3              (The following question was read:

 4              "Q.  Okay.  What did you say to him

 5         and what did he say to you?")

 6    BY MR. SLADE:

 7         **Q.   Can you answer that question?**

 8         A.   I don't recall about 900 Park, what

 9    was said, so --

10         **Q.   Well, you agreed to purchase the**

11    **property, correct?**

12         A.   It was part of a larger -- a larger

13    transaction.

14         **Q.   Okay.  Tell me about that**

15    **transaction, please.**

16         A.   There was an opportunity of

17    purchasing a property that was in distress.

18    And that property had more debt at the time

19    than what it was considered valued.  But I

20    felt it was a good deal as a developer.

21         **Q.   What property was in distress?**

22         A.   It's a property -- different

23    property in the city.

24         **Q.   Can you tell me where it is?**

25         A.   On 73rd Street.

Arthur Spitzer
October 29, 2020

Page 16

```
 1          Q.    Can I have the address, please.
 2          A.    I believe it's 51 East 73rd.
 3          Q.    Was that the only property that you
 4    discussed with Mr. Goldstein?
 5          A.    That was the main focus, yes.
 6          Q.    Okay.  So the main focus was 51
 7    East 73rd Street.  Did you actually purchase
 8    that property?
 9          A.    Yes.
10          Q.    Okay.  And through an entity?
11          A.    Yes.
12          Q.    What was the name of the entity?
13          A.    I don't recall.
14          Q.    Okay.  Who would know the answer to
15    that?
16          A.    My office.
17          Q.    Do you have documents which would
18    reflect the purchase of that entity?
19          A.    I'm sure we do.
20          MR. BERMAN:  Don't guess at
21          anything.  It's what you know.
22    BY MR. SLADE:
23          Q.    Where are those documents located?
24          A.    I don't handle acquisitions or any
25    legal stuff.  I'm strictly development.  I
```

Arthur Spitzer
October 29, 2020

Page 17

 1   enjoy building, that's what I do.  So I have

 2   Mendy Goldstein for that.  I don't handle

 3   that stuff.

 4       **Q.   So if there are documents in your**

 5   **office, you wouldn't know where they were or**

 6   **who has them?**

 7       A.   Correct.

 8       **Q.   Okay.  So what were the terms of**

 9   **the transaction regarding 51 East 73rd**

10   **Street?**

11       A.   51 East 73rd Street, there was no

12   terms.

13       **Q.   Did you or an entity with which**

14   **you're affiliated acquire that property as an**

15   **acquisition?**

16       A.   Yes.  But there was no money

17   involved.

18       **Q.   You bought it for free?**

19           MR. BERMAN:  Answer his question,

20       go ahead.

21       A.   There was no --

22           MR. SLADE:  Do me a favor,

23       Mr. Berman.  I'm going to note for the

24       record that you just said, quote, "Just

25       answer his question."

Arthur Spitzer
October 29, 2020

Page 18

1          MR. BERMAN:  Correct.

2          MR. SLADE:  Okay, not correct.  You

3    are not allowed to speak on the record.

4    I don't know where you learned that.

5          MR. BERMAN:  I don't know where you

6    learned your federal law, but an

7    attorney is allowed to speak on the

8    record.

9          MR. SLADE:  Not when there's a

10   question pending, sir.

11         MR. BERMAN:  Ask your next

12   question.

13         MR. SLADE:  Please don't speak on

14   my record.

15         MR. BERMAN:  Ask your next

16   question.

17         MR. SLADE:  I want you to read back

18   my question.

19         I know what you're doing, it's very

20   obvious to me.

21         MR. BERMAN:  Okay.

22         MR. SLADE:  Totally inappropriate.

23         MR. BERMAN:  What am I doing?

24         MR. SLADE:  Your interrupting my

25   questioning because you think that for

Arthur Spitzer
October 29, 2020

Page 19

 1      some reason I'm an amateur and you're

 2      going to throw me off.

 3           MR. BERMAN:  Is that what I really

 4      am thinking?

 5           MR. SLADE:  I think so because

 6      you're speaking in the middle of my

 7      questions.

 8           MR. BERMAN:  I'm speaking --

 9           MR. SLADE:  I want the record to

10      reflect that Mr. Berman continues to

11      speak on the record in the middle of my

12      question, and he's coaching the witness.

13      Do not coach the witness, Mr. Berman.

14           MR. BERMAN:  What do I know?

15           MR. SLADE:  Do not coach the

16      witness.

17           Could you read back my last

18      question.

19           MR. BERMAN:  I thought you were a

20      better attorney than this.  Come on, ask

21      your question.

22           (The following question was read:

23           "Q.  You bought it for free?")

24   BY MR. SLADE:

25      **Q.  Can you answer that question?**

Page 20

```
 1        A.    There was no value.

 2        Q.    So did you take on a mortgage with

 3   respect to that property?

 4        A.    Yes.

 5        Q.    Okay.  How much was the mortgage

 6   for?

 7        A.    $25 million.

 8        Q.    Okay.  And when did this occur?

 9        A.    Also beginning of March.

10        Q.    March 2020?

11        A.    Correct.

12        Q.    Okay.  What took place first, the

13   51 East 73rd Street transaction or the

14   900 Park transaction?

15        A.    Simultaneously.

16        Q.    Simultaneously?

17        A.    I believe so.

18        Q.    Okay.  So before you acquired title

19   to the 51 East 73rd Street property, you knew

20   there was a mortgage on it, correct?

21        A.    Correct.

22        Q.    Okay.  And you also knew there was

23   a mortgage on -- with respect to the 900 Park

24   property as well, correct?

25        A.    Whatever shows on public records,
```

Arthur Spitzer
October 29, 2020

Page 21

 1    that's what we knew.

 2         Q.   Okay.  Did you inquire before you

 3    took title, either in your individual name or

 4    through a company, whether the 51 East 73rd

 5    Street mortgage was current?

 6         A.   It was all on public record.  I

 7    knew what's going to come up on title.

 8         Q.   Okay.  That's not going to come up

 9    on title, whether the mortgage is current;

10    would you agree with me?

11         A.   If there's a lis pendens, there

12    will.

13         Q.   Okay.  I didn't ask you that.  I

14    asked you whether you inquired before your

15    company took title to the 51 East 73rd Street

16    property whether the mortgage was current.

17         A.   I don't know.

18         Q.   Who would know the answer to that?

19         A.   Mendy Goldstein.

20         Q.   Okay.  You testified that the

21    property was in distress; do you remember

22    telling me that?

23         A.   Yes.

24         Q.   And when you said "distress," what

25    you meant was the property was in default of

Arthur Spitzer
October 29, 2020

Page 22

1   the mortgage; isn't that true?

2           MR. BERMAN:  Objection.  Ask him

3       what he meant.  Don't tell him what he

4       meant.

5       A.   It was over --

6           MR. BERMAN:  Ask him what he meant.

7       He'll tell you.

8           MR. SLADE:  Okay.  I think we're

9       going to have to get a ruling from the

10      Court.

11          MR. BERMAN:  Good.

12          MR. SLADE:  Because I'm not going

13      to let you do this, Mr. Berman.  You're

14      not going to be able to coach the

15      witness.

16          MR. BERMAN:  I'm not coaching him.

17      I'm not going to let you put words in

18      his mouth.  He -- you want to know what

19      he means, ask him.

20          MR. SLADE:  I did ask him.  I want

21      an answer to my question.

22          MR. BERMAN:  No, you did not.

23          MR. SLADE:  Don't interrupt.

24      Please don't interrupt my deposition.

25      I'm going to ask you one more time.  I'm

Arthur Spitzer
October 29, 2020

Page 23

 1        being very patient with you.

 2             Can you read back the last

 3        question.

 4             (The following question was read:

 5             "Q.  And when you said 'distress,'

 6        what you meant was the property was in

 7        default of the mortgage; isn't that

 8        true?")

 9   BY MR. SLADE:

10        Q.   Can you answer that question?

11        A.   No.

12        Q.   Why not?

13        A.   It's not true.

14        Q.   Well, you just answered it.  So

15   either you can answer it or you can't answer

16   it.  I mean, I don't understand -- I'm just

17   trying to get your testimony.

18             MR. BERMAN:  Why are you being

19        argumentative?  Ask him questions.  You

20        want to put him on the witness stand?

21        During trial you can be all the

22        argument -- argumentative as you want.

23        This is a deposition.  It's to get

24        information.

25             MR. SLADE:  Mr. Berman --

Arthur Spitzer
October 29, 2020

Page 24

```
 1              MR. BERMAN:  Yes.
 2              MR. SLADE:  -- I'm going to tell
 3        you what I'm doing in my deposition.
 4        You're not going to tell me.
 5              MR. BERMAN:  Fine.  Ask him a
 6        question.
 7              MR. SLADE:  I did.
 8              MR. BERMAN:  Don't tell him what he
 9        means.  Don't tell him -- don't be
10        argumentative.  And ask a proper
11        question.
12    BY MR. SLADE:
13        Q.   Sir, isn't it true that you knew
14    before you took on the 51 East 73rd Street
15    property that the property was in distress;
16    you knew that, didn't you?
17        A.   It was overleveraged.
18        Q.   What did you mean by
19    "overleveraged"?
20        A.   There was more debt than the --
21    what the building was valued on the street.
22        Q.   And did you know whether or not the
23    mortgage was current or not?
24        A.   No.
25        Q.   And you never asked that?
```

Arthur Spitzer
October 29, 2020

Page 25

```
 1        A.   I wasn't involved.

 2        Q.   So your answer is no, you didn't

 3   ask that?

 4             MR. BERMAN:  Objection.  His answer

 5        is what it is.

 6   BY MR. SLADE:

 7        Q.   And Mr. Goldstein never asked

 8   whether the property mortgage was current,

 9   correct?

10        A.   I don't know.

11        Q.   Sorry?

12        A.   I don't know.

13        Q.   Okay.  What about the 900 Park

14   Avenue property, did you ever make an inquiry

15   about whether the mortgage was current?

16        A.   Only what showed on public records.

17        Q.   So you purchased the property from

18   an individual, is that not right, the

19   900 Park Avenue property?

20        A.   I don't recall.

21        Q.   You don't know who you bought the

22   property from?

23        A.   I don't recall if it was LLC or

24   individual.  I don't recall.

25        Q.   Okay.  You are an owner of a
```

Arthur Spitzer
October 29, 2020

Page 26

1   company called Central Park Partners; isn't

2   that true?

3         A.    Yes.

4         Q.    Okay.  And you caused that company

5   to be formed in or about March 2020, correct?

6         A.    Correct.

7         Q.    And the purpose of that company was

8   to acquire title to the 900 Park Avenue

9   condominium?

10         A.    The purpose was for 73rd Street.

11   900 Park was just an add-on because they

12   wanted money.

13         Q.    Who wanted money?

14         A.    The owners.

15         Q.    Okay.  And who are the owners?

16         A.    Simone Ender.

17         Q.    Well, you used the plural,

18   "owners."  Who else did you mean?

19         A.    I don't know who else she is

20   involved with.

21         Q.    Have you ever met Simone Ender?

22         A.    No.

23         Q.    Have you ever spoken to Simone

24   Ender on the phone?

25         A.    No.

Arthur Spitzer
October 29, 2020

Page 27

```
 1          Q.   Have you ever met Monique
 2     Silberman?
 3          A.   No.
 4          Q.   Have you ever spoken to Monique
 5     Silberman on the phone?
 6          A.   Yes.
 7          Q.   Okay.  When was the first time you
 8     spoke to Monique Silberman on the phone?
 9          A.   I don't recall.
10          Q.   Was it more than six months ago?
11          A.   I really don't remember.
12          Q.   Do you have a personal or
13     professional relationship with Monique
14     Silberman outside the business dealings with
15     her mother's properties:  51 East 73rd Street
16     and 900 Park Avenue?
17          A.   No.
18          Q.   Okay.  Do you recall whether you
19     had one conversation or more than one
20     conversation with Monique Silberman?
21          A.   I don't recall.
22          Q.   Was it 5 conversations, was it 10
23     conversations?
24          A.   I really don't recall.
25          Q.   Do you recall attending a meeting
```

Arthur Spitzer
October 29, 2020

Page 28

 1    at Simone Ender's apartment to discuss her

 2    real estate issues?

 3         A.    No.

 4         Q.    Do you know whether Mr. Goldstein

 5    attended a meeting at Ms. Ender's apartment

 6    to discuss her real estate issues?

 7         A.    I don't know.

 8         Q.    Did you ever talk to Mr. Goldstein

 9    about that?

10         A.    No.

11         Q.    Okay.  Well, you testified earlier,

12    before Mr. Berman interrupted my question,

13    that you had spoken to Mr. Goldstein about

14    these two properties, the 51 East 73rd Street

15    and the 900 Park Avenue.  Do you remember

16    telling me that?

17         A.    Yes.

18         Q.    Did you have one conversation with

19    him about these properties or more than one

20    conversation?

21         A.    I don't recall how many.

22         Q.    Can you give me your best estimate

23    sitting here today?

24         A.    No.

25         Q.    Okay.  Do you recall what you said

Arthur Spitzer
October 29, 2020

Page 29

1    to him?

2         A.   Discussed only development on my

3    part.

4         Q.   Well, these are properties that are

5    already in existence, right?  51 East 73rd

6    Street and 900 Park Avenue, there's nothing

7    to be built there; am I right?

8         A.   That's wrong.

9         Q.   Oh, really?  So tell me what there

10   is to build.

11        A.   East 73rd, there's a development

12   project.

13        Q.   Okay.  So 51 East 73rd Street is an

14   undeveloped piece of real estate?

15        A.   Have you ever heard of "rehab"?

16        Q.   I -- it's not that I never heard of

17   it, but I need you to tell me because I

18   wasn't there.

19        A.   It's dilapidated.  It's not -- it's

20   not useful.  It's bricks, but that's all it

21   is.

22        Q.   Okay.  So you -- you were involved

23   in discussing it -- a rehab of the 51 East

24   73rd Street property, correct?

25        A.   Correct.

Arthur Spitzer
October 29, 2020

Page 30

1        Q.   And -- but there was no rehab at

2   the 900 Park Avenue property; is that fair?

3        A.   Correct.

4        Q.   Okay.  So tell me what type of

5   rehab you discussed with Mr. Goldstein

6   regarding the 51 East 73rd Street property.

7        A.   I don't think it's relevant.

8        Q.   Really not up to you whether it's

9   relevant.  It's up to me and the judge, of

10   course.  Can you answer the question?

11        A.   I really don't think it's relevant.

12        Q.   Sir, if I'm correct, and I

13   understand for the record you're refusing to

14   answer that question?

15        A.   Discussed of what potential could

16   be done in the building to make it best use

17   and maximize it.  That's all.

18             MR. SLADE:  Mr. -- Mr. Spitzer, I

19        would like you to please point the

20        camera in such a manner so I can see

21        your attorney because I hear his

22        whispering to you off the record.

23             MR. BERMAN:  I'm not whispering

24        anything.  I told him to answer the

25        question.  Maybe you need a hearing aid.

Arthur Spitzer
October 29, 2020

 1            MR. SLADE:  Do me a favor, don't

 2       tell him anything.

 3            MR. BERMAN:  Maybe you're just

 4       trying to foul up this record.

 5            MR. SLADE:  Don't tell him anything

 6       while a question is pending.

 7            MR. BERMAN:  Question wasn't

 8       pending.  He said he wasn't going to

 9       answer it.

10            MR. SLADE:  Mr. Berman, I would

11       like you to appear on the camera.

12            MR. BERMAN:  You can ask me.

13            MR. SLADE:  I am asking you.

14       Please appear on the camera so I can see

15       you.

16            MR. BERMAN:  Sure.

17            MR. SLADE:  Thank you.

18  BY MR. SLADE:

19       Q.   Okay.  So is it the case that there

20  was no development to be done with the

21  900 Park Avenue property; am I right?

22       A.   Not that I know of.

23       Q.   Okay.  So you took title to the 51

24  East 73rd Street property with $25 million

25  worth of debt on it?

Arthur Spitzer
October 29, 2020

Page 32

```
 1        A.    Yes.
 2        Q.    Did you procure or obtain
 3   permission from the lender before you did
 4   that?
 5        A.    I don't know.
 6        Q.    Who would know the answer to that?
 7        A.    Mendy Goldstein.
 8        Q.    Okay.  Is your company or are you
 9   paying the mortgage on the 51 East 73rd
10   Street property?
11        A.    I don't know.
12        Q.    Well, what is it that you do know
13   about the 51 East 73rd Street property?  You
14   took title to the property.  You're doing a
15   rehab on the property.  Isn't somebody --
16   there's $25 million worth of debt.  Isn't
17   somebody paying the mortgage?
18        A.    Again, I deal with the development
19   parts, nothing financials, nothing
20   transactional.  That's not my -- not my
21   field.
22        Q.    So have you started the
23   development?
24        A.    We're working on plans.
25        Q.    Have you given consideration to
```

Page 33

1    whether or not the mortgage on the 900 Park

2    Avenue property is going to be paid?

3              MR. BERMAN:  Can you repeat the

4         question.

5    BY MR. SLADE:

6         Q.   Have you given consideration to

7    whether the mortgage on the 900 Park Avenue

8    property is going to be paid?

9         A.   I don't know.

10        Q.   Well, I mean, sir, you are the

11   owner of Central Park Partners, are you not?

12        A.   Yes.

13        Q.   And you are now the owner of the

14   property at 900 Park Avenue, correct?

15        A.   Correct.

16        Q.   And there's a mortgage on the

17   property, correct?

18        A.   Correct.

19        Q.   And you're aware of it, correct?

20        A.   Correct.

21        Q.   And now you know that there's a

22   federal court lawsuit pending over that

23   mortgage on that property, correct?

24        A.   Correct.

25        Q.   So my question to you then is:

Arthur Spitzer
October 29, 2020

Page 34

1    Knowing all these things, you're the owner of
2    the company, you're now the owner of the
3    property through the company.  Are you
4    planning to pay the mortgage, yes or no?
5         A.   When I took it over, I knew the
6    mortgage was being paid by the tenant.
7    That's all I know.
8         Q.   You didn't answer my question.  My
9    question is whether you plan to pay the
10   mortgage now that Central Park Partners is
11   the owner?
12        A.   I have to discuss it with people.
13   I don't know.
14        Q.   Who are your people that you have
15   to discuss it with?
16        A.   Mendy Goldstein.
17        Q.   Okay.  But you're aware now that
18   there's a federal court lawsuit pending
19   regarding this because you're involved in the
20   deposition, right?
21        A.   Yes.
22        Q.   Okay.  So you've already testified
23   that you are the owner of Central Park
24   Partners, which is a New York limited
25   liability company, correct?

Arthur Spitzer
October 29, 2020

Page 35

```
 1       A.    Correct.
 2       Q.    And you're the sole owner; am I
 3   right?
 4       A.    Yes.
 5       Q.    Okay.  And are you also the manager
 6   of the company?
 7       A.    Yes.
 8       Q.    So you're the decision-maker,
 9   correct?
10       A.    Correct.
11       Q.    Are you a nominee for some other
12   person or are you really the owner?
13       A.    I'm the owner.
14       Q.    Okay.  At what point did you become
15   aware of the mortgage on the 900 Park Avenue
16   property?
17       A.    Just the mortgage?
18       Q.    Just the mortgage.
19       A.    We knew all along.
20       Q.    Okay.  At what point did you become
21   aware of this lawsuit?
22       A.    I don't recall.
23       Q.    So is it possible that you became
24   aware of the lawsuit before you purchased the
25   property?
```

Arthur Spitzer
October 29, 2020

Page 36

```
 1        A.   No.
 2        Q.   So if you don't recall, how do you
 3   know that?
 4        A.   I know it was summertime.  I don't
 5   know it was June or July or May, but it was
 6   in the summertime.
 7        Q.   That you became aware of the
 8   lawsuit?
 9        A.   Correct.
10        Q.   And how did you learn of that?
11        A.   Mendy Goldstein has mentioned it to
12   me.
13        Q.   How did he hear of it?
14        A.   I don't know.
15        Q.   Well, you know, don't you, that
16   Naomi Zeltser also represented Monique
17   Silberman, don't you?
18        A.   I don't know.
19        Q.   Do you know that Naomi Zeltser also
20   represented Simone Ender, don't you?
21        A.   I don't know.
22        Q.   Now, you're aware -- well,
23   withdrawn.
24             Have you had an opportunity since
25   you learned about the lawsuit to review the
```

Arthur Spitzer
October 29, 2020

Page 37

```
 1    loan documents which encumber the property?
 2         A.    No.
 3         Q.    So you've never looked at them?
 4         A.    No.
 5         Q.    Okay.  Who is it that's paying the
 6    attorney's fees for Central Park Partners in
 7    this case?
 8         A.    I am.
 9         Q.    Okay.  And what is your objective
10    with respect to your continued litigation of
11    this case; what is it you're hoping to
12    accomplish?
13         A.    I don't know.
14         Q.    Well, you're spending money on
15    legal fees and you're fighting a federal
16    court lawsuit.  Don't you think you should
17    have an understanding of what your objectives
18    are?
19         A.    I trust my people.
20         Q.    Who are your people?
21         A.    Mendy Goldstein.
22         Q.    Well, I guess my question to you
23    is:  Do you know or do you realize that you
24    have or may have personal liability in
25    connection with this lawsuit?
```

Arthur Spitzer
October 29, 2020

Page 38

```
 1          A.    I don't know.
 2          Q.    Okay.  Do you have any reason to
 3     doubt that the loan that was made to Simone
 4     Ender by my client in this case was a
 5     business loan?
 6          A.    I have no idea.
 7          Q.    Okay.  Could you explain to me the
 8     relationship, if any, between the 51 East
 9     73rd Street acquisition and the 900 Park
10     Avenue acquisition?
11          A.    All I know, it was taken all
12     together.
13          Q.    Do you know why it was taken all
14     together?
15          A.    Because she wanted we should pay
16     some debt of hers, personal debt.
17          Q.    And when you say "hers," you mean
18     Simone Ender, correct?
19          A.    Correct.
20          Q.    Okay.  And what was the personal
21     debt that she wanted you to pay?
22          A.    I don't recall everything, but I
23     know her main issue was she owed a lot of
24     maintenance money.
25          Q.    For what properties?
```

Arthur Spitzer
October 29, 2020

Page 39

 1        A.    I don't -- I think her personal.

 2        Q.    You think what?

 3        A.    I'm not sure.

 4        Q.    Do you know how much it was that
 5   she owed?

 6        A.    Around 250.

 7        Q.    $250,000, correct?

 8        A.    Correct.

 9        Q.    And did you offer to pay that as
10   part of the acquisition of these two
11   properties, 51 East 73rd Street and 900 Park
12   Avenue?

13        A.    Correct.

14        Q.    And was that an oral agreement or
15   written agreement?

16        A.    I don't know.

17        Q.    Who would know the answer to that?

18        A.    Mendy Goldstein.

19        Q.    Were those monies ever paid?

20        A.    I don't recall.

21        Q.    Well, $250,000 is a lot of money,
22   wouldn't you agree with me?

23        A.    Yes.

24        Q.    So who was supposed to pay the
25   $250,000?

Arthur Spitzer
October 29, 2020

Page 40

1       A.    The company was going to pay it.

2       Q.    **Central Park Partners, right?**

3       A.    Correct.

4       Q.    **That's your company that you are**

5  **the owner of?**

6       A.    I said I don't deal with finances.

7       Q.    **Okay.  So even though it's your**

8  **company, you have no idea whether the money**

9  **was supposed to be paid or was, in fact,**

10 **paid; am I right?**

11      A.    I don't know how much was paid, and

12 what was paid and what not.  I don't know.

13      Q.    **So who is it that provides funding**

14 **for Central Park Partners; is that you**

15 **personally, Mr. Goldstein or somebody else?**

16      A.    I don't see the relevance.

17      Q.    **Okay.  You can answer the question,**

18 **anyway.**

19      A.    Comes through me.  I have investors

20 and whatnot.

21      Q.    **Who are the investors on the**

22 **900 Park Avenue property?**

23      A.    No investors on 900 Park Avenue.

24      Q.    **There's no investors.  It's just**

25 **you?**

Arthur Spitzer
October 29, 2020

Page 41

```
 1        A.    Yes.
 2        Q.    So if you were going to pay
 3   $250,000 or you had an agreement to pay
 4   $250,000, where was that money going to come
 5   from?
 6        A.    That's not relevant.
 7        Q.    Okay.  You can answer.
 8        A.    I don't know the answer.
 9        Q.    So this agreement to pay the
10   $250,000 was an oral agreement, it was never
11   committed to writing; am I correct?
12        A.    I don't know.
13        Q.    Okay.  Since you acquired the
14   property at 900 Park Avenue, have you made
15   any efforts to sell it?
16        A.    No.
17        Q.    Why not?
18        A.    I don't know.  I'm not involved in
19   that stuff.
20        Q.    Have you made any efforts to rent
21   it?
22        A.    I have no idea.
23        Q.    Who would know the answer to that?
24        A.    Mendy Goldstein.
25        Q.    What about -- what about the
```

Arthur Spitzer
October 29, 2020

Page 42

1    monthly assessments; have you made any effort

2    to pay the condominium, the monthly

3    assessments?

4            MS. ZELTSER:  Will you let him know

5        that I'm physically present.

6            MR. BERMAN:  Ms. Zeltser wants the

7        record to note that she's physically

8        present.

9            MR. SLADE:  Okay, that's fine.  But

10       just, Naomi, please don't make comments

11       in the middle of a question.  Just wait.

12           MS. ZELTSER:  No problem.  I just

13       want you to know that I'm here, okay?

14           MR. SLADE:  I'm very happy that

15       you're here.  But I just want you to

16       know that there was a question pending.

17       I want to make sure the witness heard

18       the question and the record to be clear.

19       So let me try it again.

20   BY MR. SLADE:

21       Q.   Is Central Park Partners making any

22   effort to pay the condominium assessments,

23   now that it's the owner of the 900 Park

24   Avenue property?

25       A.   I don't know.  I have to check.

Page 43

1       Q.   Well, don't you think, as the owner

2  of a piece of real estate in a condominium,

3  you should be paying the assessments?

4       A.   I don't know.

5       Q.   Other than the deals for the 51

6  East 73rd Street and 900 Park Avenue, have

7  you, Mr. Goldstein or anyone at your company

8  done any other business deals either with

9  Simone Ender or Monique Silberman?

10      A.   I don't think so.

11      Q.   Okay.  Do you go to the same temple

12  as Monique Silberman?

13      A.   No.

14      Q.   Do you know if Mr. Goldstein goes

15  to the same temple as Monique Silberman or

16  Simone Ender?

17      A.   I don't know.

18      Q.   Do you know the basis of

19  Mr. Goldstein's relationship with Monique

20  Silberman or Simone Ender?

21      A.   No.

22      Q.   Well, let me ask you a question,

23  sir.  You're an owner of Central Park

24  Partners, correct?

25      A.   Yes.

Arthur Spitzer
October 29, 2020

Page 44

```
 1         Q.    You're a defendant in this lawsuit

 2     pending in federal court in New York,

 3     correct?

 4         A.    Yes.

 5         Q.    What is your defense to this case?

 6             MR. BERMAN:  Objection.  That's a

 7         legal thing.

 8     BY MR. SLADE:

 9         Q.    You can answer.

10  DI         MR. BERMAN:  No, he can't.  His

11         lawyer can do that.

12             MS. ZELTSER:  You're instructing

13         him not to answer?

14             MR. BERMAN:  Yes, I am.

15             MR. SLADE:  Could you please state

16         that clearly on the record.

17             MR. BERMAN:  I did.

18             MR. SLADE:  No, I want to make sure

19         that I heard that and the court reporter

20         has that down.

21             MR. BERMAN:  Next question, Roger.

22             MR. SLADE:  Well, let the record

23         reflect, since Mr. Berman refuses to

24         voice his objection on the record in a

25         clear manner, I'm going to phrase it for
```

Arthur Spitzer
October 29, 2020

Page 45

```
 1        the court reporter.
 2             My understanding is that I asked
 3        Mr. Spitzer what -- his client what his
 4        defense was to this case, and Mr. Berman
 5        instructed him not to answer on the
 6        grounds that it was a, quote, legal
 7        question.  So that's clear for the
 8        record.
 9   BY MR. SLADE:
10        Q.   Mr. Spitzer, you don't have any
11   defense to this case, do you?
12   DI        MR. BERMAN:  Objection.
13             Don't answer.
14   BY MR. SLADE:
15        Q.   You can answer.
16             MR. BERMAN:  No.
17             MR. SLADE:  You're instructing him
18        not to answer again?
19             MR. BERMAN:  I -- can you show me
20        where he's named as a defendant?
21             MS. ZELTSER:  He never amended the
22        caption.
23             MR. BERMAN:  He never amended the
24        caption?
25             MS. ZELTSER:  No.
```

Arthur Spitzer
October 29, 2020

Page 46

 1        MR. BERMAN:  So he's not a
 2  defendant.  The paper that I'm holding
 3  here --
 4        MS. ZELTSER:  Tell him how to do
 5  his job.
 6        MR. BERMAN:  The papers that I'm
 7  holding here, he's not a defendant, so
 8  he doesn't have to defend this.
 9        MR. SLADE:  Mr. Berman, Judge
10  Fiscusel entered an order on this.  Are
11  you serious?
12        MR. BERMAN:  Sir --
13        MS. ZELTSER:  We're talking about
14  your notice of deposition.  It doesn't
15  include Central Park.  That's what he's
16  noticing.
17        MR. SLADE:  Okay.  Do you want me
18  to have it re-sent to you?
19        MS. ZELTSER:  No, it's okay.
20        MR. SLADE:  Can you stipulate on
21  the record, Naomi, since you're counsel
22  of record that Mr. Berman has not made
23  an appearance in this case other than a
24  deposition; that Central Park Partners
25  is a party to this lawsuit as an

Arthur Spitzer
October 29, 2020

Page 47

```
 1          intervenor defendant?  Can we stipulate
 2          to that.
 3              MS. ZELTSER:  Yes, we can.
 4              MR. SLADE:  Okay, good.  Thank you,
 5          I appreciate that.
 6              MS. ZELTSER:  You're welcome.
 7    BY MR. SLADE:
 8          Q.   So you are aware, are you not, sir,
 9    sitting here today that the 900 Park Avenue
10    property which has held title in the name of
11    Central Park Partners is in a federal court
12    foreclosure lawsuit, correct?
13          A.   Yes.
14          Q.   And you're aware that if the court
15    grants summary judgment, you could lose the
16    property, correct?
17          A.   Yes.
18          Q.   And you're also aware, are you not,
19    that interest is accruing on the mortgage on
20    that property, correct?
21          A.   Yes.
22          Q.   And you're also aware now that the
23    mortgage is in default, correct?
24          A.   Yes.
25          Q.   And you're aware, are you not, that
```

Arthur Spitzer
October 29, 2020

Page 48

1    the mortgage has a provision for default

2    interest, are you not?

3         A.   Yes.

4         Q.   And you're also aware that the

5    mortgage and the note have a provision for

6    attorney's fees, correct?

7         A.   Okay.

8         Q.   You understand that, don't you?

9         A.   Okay, yeah.

10        Q.   So the continued litigation of this

11   case is causing additional attorney's fees to

12   be expended.  You're aware of that, are you

13   not?

14        A.   Okay.

15        Q.   So if there's any equity in the

16   property, it's being now eaten away by the

17   interest, the default interest and the

18   attorney's fees; are you aware of that?

19        A.   Okay.

20        Q.   Have you made an analysis of the

21   value of this property?

22        A.   I have to check.

23        Q.   Well, I mean, sir, you're the owner

24   of the property through an entity in which

25   you are the sole owner and manager.  You're

Page 49

```
 1   telling me that you don't know how much it's
 2   worth?
 3        A.   Things change.  New York is a very
 4   scary place now.
 5        Q.   Okay.  Do you know whether, when
 6   you acquired the 900 Park Avenue property,
 7   you paid any taxes?
 8        A.   I don't know.
 9        Q.   Transfer taxes?
10        A.   I don't know.
11        Q.   Who would know the answer to that?
12        A.   I assume Mendy Goldstein.
13        Q.   Is Central Park Partners a related
14   entity to -- in any way to Simone Ender?
15        A.   No.
16        Q.   Are you or is Central Park Partners
17   in business or partners in business with
18   Simone Ender or Monique Silberman?
19        A.   No.
20        Q.   Your attorneys have taken the
21   position in court, and you have taken the
22   position in court, that the loan which was
23   issued by RL 900 Park Avenue to Simone Ender
24   was predatory.  Are you aware of that?
25        A.   I don't know.
```

Arthur Spitzer
October 29, 2020

Page 50

```
 1          Q.   Do you believe that the loan that
 2   was issued to Simone Ender by RL 900 Park or
 3   its predecessor was in any way predatory?
 4          A.   I really don't know.
 5          Q.   Do you know what it means that --
 6   for a loan to be predatory?
 7          A.   No.
 8          Q.   Did you ever take out any title
 9   insurance on this property?
10          A.   I don't know.
11          Q.   Did you hire a title insurance
12   company to do a search in connection with
13   this property?
14          A.   It was hired.  I didn't hire it.
15          Q.   Who hired them?
16          A.   Mendy Goldstein.
17          Q.   Just to back up a question.  And if
18   I asked you this, I'm sorry.
19               But did you ever pay Simone Ender
20   the $250,000?
21          A.   I don't know.
22          Q.   Do you know whether Simone Ender
23   ever disclosed to you or to Mr. Goldstein
24   before you acquired the property the
25   existence of this lawsuit?
```

Page 51

```
 1        A.    What?

 2              MR. SLADE:  Could you read it back,

 3        please.

 4              (The following question was read:

 5              "Q.  Do you know whether Simone

 6        Ender ever disclosed to you or to

 7        Mr. Goldstein before you acquired the

 8        property the existence of this

 9        lawsuit?")

10        A.    Not to me.

11   BY MR. SLADE:

12        Q.    Who is Joel Rosenzweig?

13        A.    I have no idea.

14        Q.    Did you have any role with respect

15   to filling out a real property transfer

16   report which was filed with the State of

17   New York --

18        A.    I don't know.

19        Q.    -- for the sale of this property?

20              MR. BERMAN:  I didn't get the last

21        part of your question.

22   BY MR. SLADE:

23        Q.    Did you have any role or

24   involvement in connection with the filing of

25   the real property transfer report with the
```

Arthur Spitzer
October 29, 2020

Page 52

1    State of New York in connection with the sale

2    of this property?

3        A.   It's not my job.  I don't recall.

4        Q.   Okay.  So you know nothing about

5    that?

6        A.   I don't know.

7        Q.   Have you ever seen a copy of the

8    notice of pendency that was filed in this

9    case?

10       A.   I don't recall.

11       Q.   Well, let's take a look at it since

12   we marked it previously.  I'm going to refer

13   you to Exhibit 2 which was marked at the

14   deposition of Mendy Goldstein.  I'm going to

15   ask if you've ever seen that document before.

16       A.   No.

17       Q.   Okay.  Let's show you what we

18   marked -- I believe it's Exhibit 3.

19            MR. BERMAN:  This whole package?

20            MR. SLADE:  I can't answer your

21       question.  I don't understand it.  So

22       I'm going to -- I'm going to object to

23       your question.

24            MR. BERMAN:  Sure.  This thing has

25       about 50 pages.  Is that what you're

Arthur Spitzer
October 29, 2020

Page 53

```
 1          showing him or do we have too much of
 2          it?
 3                 MR. SLADE:  I'm showing him what
 4          was marked before in the prior
 5          deposition as Exhibit 3.
 6                 MR. BERMAN:  Okay.
 7                 MR. SLADE:  Which is a notice of
 8          pendency.
 9                 THE WITNESS:  This was filed in
10          July, right?
11    BY MR. SLADE:
12          Q.  Well, let me pull it up on a
13    separate computer because this one is not --
14    hold on a second.  All right.  Give me a
15    second.
16                 (Brief interruption.)
17    BY MR. SLADE:
18          Q.  Okay.  I'm going to show you what
19    we marked as Exhibit 3 for identification,
20    which is a copy of notice of pendency and the
21    notice of finding and a notice of amended
22    pendency -- I'm sorry.
23                 It's a notice of filing containing
24    a copying of an amended notice of pendency
25    dated July 2, 2020.
```

Arthur Spitzer
October 29, 2020

Page 54

```
 1                    I'm going to ask if you've ever
 2    seen that before.
 3         A.    No.
 4         Q.    Okay.  Sir, do you have an email
 5    address?
 6         A.    Yes.
 7         Q.    Do you have more than one email
 8    address?
 9         A.    No, I don't recall.
10         Q.    What is your email address that you
11    use for business?
12         A.    Arthur@deutschequity.com.
13         Q.    Could you spell that?
14         A.    D-E-U-T-S-C-H, E-Q-U-I-T-Y,
15    dot-com.
16         Q.    Before this deposition took place
17    today, did you make any effort to search your
18    emails?
19         A.    Today?
20         Q.    Before the deposition took place
21    today, did you make any effort to search your
22    emails?
23         A.    I don't think so, no.
24         Q.    Did you ever make any effort to
25    search your emails for correspondence with
```

Arthur Spitzer
October 29, 2020

Page 55

1    Mendy Goldstein about the 900 Park Avenue

2    property?

3         A.   Yes.

4         Q.   When did you do that?

5         A.   A while back Naomi asked for

6    emails.

7         Q.   When?

8         A.   I don't recall.

9         Q.   More than two weeks ago?

10        A.   I don't recall.

11        Q.   More than a month ago?

12        A.   Could be.  I don't recall.

13        Q.   Did you find any emails?

14        A.   No.

15        Q.   Did you search your email with

16   respect to any correspondence you might have

17   had with Simone Ender?

18        A.   No.

19        Q.   You didn't search for emails for

20   that correspondence, or you searched and you

21   didn't find anything?

22        A.   I didn't find anything on 900 Park.

23        Q.   Did you search your emails for any

24   correspondence you had with Monique Silberman

25   either about 900 Park or 51 East 73rd Street?

Arthur Spitzer
October 29, 2020

Page 56

```
 1        A.    Yes.
 2        Q.    And did you find anything?
 3        A.    No.
 4        Q.    What about text messages; you have
 5   a cell phone, don't you?
 6        A.    Yes.
 7        Q.    What kind of cell phone do you
 8   have?
 9        A.    A Samsung -- not a Samsung.  I
10   don't know what it's called.  Plus One
11   something.  I don't know.  Android.
12        Q.    Sir, what's your cell phone number?
13             MR. BERMAN:  Objection.  Don't --
14        you're not entitled to that.
15             MR. SLADE:  Well, I need to make a
16        search in my client's records to see
17        whether there's any text correspondence
18        between my client and Mr. Spitzer.  So I
19        do need that.  We'll keep it
20        confidential for the purposes of the
21        lawsuit.
22   BY MR. SLADE:
23        Q.    So I'm going to ask again one more
24   time through your attorney:  Can you please
25   give me your cell phone number?
```

Arthur Spitzer
October 29, 2020

Page 57

```
 1              MR. BERMAN:  I'm going to object to
 2         that.
 3              MR. SLADE:  Say it again.  I can't
 4         hear you, sir.
 5              MR. BERMAN:  I'm going to object to
 6         that.
 7              MR. SLADE:  Are you going to
 8         instruct him not to provide the
 9         information?
10  DI        MR. BERMAN:  Cell phone, yes.
11              MR. SLADE:  Okay.
12  BY MR. SLADE:
13         Q.   Sir, do you recall signing an
14  affidavit in this case?
15         A.   I don't know.
16              MR. BERMAN:  He's being shown
17         something dated -- check the last
18         page -- 6/29/20.  Is that what you're
19         referring to, Roger?
20              MR. SLADE:  Affidavit of
21         Mr. Spitzer, yes.  I'm checking the date
22         now.
23              MR. BERMAN:  Okay.
24              MR. SLADE:  I think this was marked
25         previously at the deposition.  I don't
```

Arthur Spitzer
October 29, 2020

Page 58

1        see a number on this one.

2               MR. BERMAN:  I'm giving you --

3               MR. SLADE:  I'm sorry?

4               MR. BERMAN:  I'm just giving you a

5        filing date.  It says document 191-1.

6               MR. SLADE:  Right.

7               MR. BERMAN:  6/29/2020.  Is that

8        what you're referring to?

9               MR. SLADE:  Correct.

10              MR. BERMAN:  Okay.

11   BY MR. SLADE:

12        Q.   That document was marked previously

13   as Exhibit 5 to the deposition of Mendy

14   Goldstein.  So I'm going to show you that.

15   I'm going to ask you if you've ever seen that

16   affidavit before.

17        A.   Yes.

18        Q.   Okay.  Do you recognize your

19   signature at the end?

20        A.   Yes.

21        Q.   Okay.  So let's go through it.  In

22   paragraph 3, your affidavit says, "As more

23   fully illustrated in my attorney's Memorandum

24   of Law, this action should be dismissed as a

25   matter of law based upon Plaintiff's failure

Arthur Spitzer
October 29, 2020

Page 59

1    to properly file a lis pendens against the

2    Property in order to adequately provide

3    notice of this action."

4              Do you see that?

5         A.   Yes.

6              MR. BERMAN:   Read the whole thing.

7              (Witness reviewing document.)

8    BY MR. SLADE:

9         Q.   Do you see that?

10        A.   Yes.

11        Q.   Do you know whether this lawsuit

12   was dismissed by the Court?

13        A.   I don't know.

14        Q.   Who would know the answer to that?

15        A.   My attorney.

16        Q.   Okay.  Other than the failure to

17   file a lis pendens, are you aware of any

18   other defense that you have in this case?

19        A.   I don't know.

20        Q.   Okay.  The next sentence says,

21   "Alternatively, Central Park seeks to

22   intervene in this action in order to preserve

23   its rights in the foreclosure and defend

24   itself in accordance with applicable laws."

25              Do you see that?

Arthur Spitzer
October 29, 2020

Page 60

```
 1      A.   Yes.
 2      Q.   What right -- do you see that?
 3   Mr. Spitzer, what rights do you think you
 4   have?
 5      A.   Ask my attorney.
 6      Q.   Okay.  So the answer is you don't
 7   know?
 8      A.   Correct.
 9      Q.   Paragraph 7, could you please read
10   that to me.
11      A.   "The Lis Pendens did not come up on
12   the title report I ordered prior to
13   purchasing the property."
14      Q.   Is that statement true?
15      A.   Yes.
16      Q.   Okay.  But you testified earlier
17   today, didn't you, that you didn't order the
18   title report; someone else did.  True or
19   false?
20      A.   It was ordered on my behalf.
21      Q.   That's not what it says here.  It
22   says, "The Lis Pendens did not come up on the
23   title report I ordered prior to purchasing
24   the property," correct?  So was that a
25   mistake?
```

Arthur Spitzer
October 29, 2020

Page 61

```
 1        A.    You know what it means.

 2        Q.    Sorry?

 3        A.    It was ordered on my behalf.

 4        Q.    Okay.  So you didn't order it; am I

 5   right?

 6        A.    I don't recall.

 7        Q.    I couldn't hear your answer.

 8              MR. BERMAN:  "I don't recall."

 9              MR. SLADE:  No, no.  Sir --

10              THE WITNESS:  I don't recall.

11              MR. SLADE:  Mr. Berman, I just

12        don't know what's possessing you to

13        answer my questions.

14              MR. BERMAN:  You said you didn't

15        hear his answer.  I gave you his answer.

16              MR. SLADE:  No, sir, you're not

17        allowed to do that.  He has to answer.

18              MR. BERMAN:  He did.  You said "I

19        didn't hear you."

20              MR. SLADE:  When I say that, he has

21        to repeat it, not you.

22              MR. BERMAN:  The court reporter

23        repeats it.

24              MR. SLADE:  Look, if -- I could ask

25        him the same question 20 times if I
```

Arthur Spitzer
October 29, 2020

Page 62

```
 1        want.  He has to answer it.  He's the

 2        witness, not you.  If you want, we can

 3        swear you in next.

 4              MR. BERMAN:  I won't do it.  You'll

 5        ask the reporter next time.

 6              MR. SLADE:  Don't tell me what to

 7        do.  If I want him to repeat the answer

 8        because I didn't hear it, I'm going to

 9        ask him to do it.

10              MR. BERMAN:  Why are you going --

11              MR. SLADE:  Please don't interrupt.

12        This is like the tenth time.

13              MR. BERMAN:  Listen, you're going

14        around in circles not accomplishing

15        anything.

16              MR. SLADE:  Listen, I am not afraid

17        of you or your speaking objections on

18        the record.  You're not impressing me.

19        You are not, okay?

20              MR. BERMAN:  And you're not

21        impressing me.

22              MR. SLADE:  Good.  Well, that's not

23        my job.  My job is not to impress you.

24   BY MR. SLADE:

25        Q.    Paragraph 8.  "Plaintiff is
```

Arthur Spitzer
October 29, 2020

Page 63

1    requesting nearly $2,000,000 on this loan,

2    the legal fees requested alone is $140,000."

3          Do you see that?

4    A.    Okay.

5    Q.    How do you know that?

6    A.    My lawyer told me.

7    Q.    So you don't have any independent

8    knowledge, right?

9    A.    No.

10   Q.    It says in the last sentence of

11   paragraph 8, "I was not prepared to have to

12   hire legal counsel and incur legal fees on a

13   foreclosure action in which I was not a party

14   to and having to step in the 'shoes' of a

15   defaulting defendant."

16         Do you see that?

17   A.    Yes.

18   Q.    Well, now you're in that position,

19   are you not?  You are now defending a

20   foreclosure case, correct?

21   A.    Correct.

22   Q.    Paragraph 9, it says, "I

23   respectfully request that this action is

24   dismissed as I am gravely prejudiced by it

25   and the amount of arrears (default interest,

Page 64

1    legal fees, and miscellaneous fees) that is

2    being claimed additionally by Plaintiff in

3    its proposed judgment."

4            Do you see that?

5       A.   Yes.

6       Q.   **Okay.  But you realize, don't you,**

7    **that the longer that you defend the case, the**

8    **higher those fees are going to be?**

9       A.   With all due respect, I didn't ask

10   for advice.

11      Q.   **You didn't ask for advice from**

12   **whom?**

13      A.   From you, sir.

14      Q.   **No, you didn't answer my question.**

15           **You realize, do you not --**

16      A.   I answered the question.

17      Q.   **-- the longer the case goes on, the**

18   **higher the fees are going to be?**

19      A.   Okay.  I answered my question the

20   way I feel answering it.  I didn't come here

21   to get business advice from you.

22      Q.   **So you do realize that, though,**

23   **don't you?  What's funny?  There's something**

24   **funny?**

25      A.   I don't -- I don't get where --

Page 65

```
 1   what the question is all about.
 2        Q.   Okay.  I'll move on to something
 3   else.
 4             Is it your position that Central
 5   Park Partners believes that it's going to
 6   validate plaintiff's previously recorded
 7   first priority mortgage on this property?
 8        A.   I have no idea.
 9        Q.   Okay.  Is this the only property
10   that Central Park Partners owns other than
11   the 51 East 73rd Street -- well, withdrawn.
12   Let me rephrase it.
13             Is the 900 Park Avenue property the
14   only property that Central Park Partners owns
15   other than the 51 East 73rd Street property?
16        A.   I think so.
17        Q.   Let me show you what we marked
18   previously as Exhibit 7 for identification,
19   which is the Answer and Affirmative
20   Defenses --
21             MR. BERMAN:  Exhibit 7.
22   BY MR. SLADE:
23        Q.   -- filed by Central Park Partners
24   in this action.
25
```

Arthur Spitzer
October 29, 2020

Page 66

```
 1        A.    Okay.

 2        Q.    Have you ever seen this document

 3    before, sir?

 4        A.    I don't recall.

 5        Q.    Do you recall seeing this document

 6    before, sir?

 7        A.    I don't recall.

 8        Q.    Do you recognize any of the

 9    affirmative defenses that are being asserted

10    here?

11        A.    I don't understand.

12        Q.    Okay.  In the document --

13        A.    Yes.

14        Q.    -- marked as Plaintiff's Exhibit 7

15    for identification, there are things called

16    "affirmative defenses."  Do you see that?

17        A.    Okay.

18        Q.    Could you please review them and

19    tell me whether you've ever seen any of those

20    affirmative defenses before.

21        A.    I have to discuss with my attorney.

22    I don't know.

23        Q.    Either you saw them or you didn't.

24        A.    I don't recall.

25        Q.    Okay.  Do you know what these
```

Page 67

1    affirmative defenses mean?

2         A.   No.

3         Q.   Have you ever been involved in a

4    similar foreclosure action regarding a

5    property that's being foreclosed in which you

6    have challenged the foreclosure either as an

7    individual or as part of a member of an

8    entity?

9         A.   Never.

10        Q.   Have you ever reviewed the docket

11   or ever -- have you been ever been shown the

12   docket that exists in this case such as filed

13   in the public records?

14        A.   No.

15        Q.   Have you ever made any efforts to

16   contact the condominium association about the

17   outstanding assessments?

18        A.   I don't know.

19        Q.   Who would know the answer to that?

20        A.   Mendy Goldstein, my office.  I

21   don't know.

22             MR. SLADE:  Okay.  I'm going to

23        take a break to talk with my client

24        about this and I'd like to try to finish

25        this up soon, so --

Arthur Spitzer
October 29, 2020

Page 68

 1          MR. BERMAN:  How long a break are

 2      you going to take, Roger?

 3          MR. SLADE:  I'm going to take

 4      probably 5 to 10 minutes, tops.  And so

 5      that you know -- and I discussed this

 6      with Ms. Zeltser already -- I have a

 7      court hearing at 3 o'clock.  So

 8      regardless, we're going to take a break

 9      at that point, but I'm not foreseeing

10      this going that much longer.

11          MS. ZELTSER:  Okay.

12          MR. SLADE:  Okay?  So we're going

13      to go off the record.

14          (Recess taken.)

15  BY MR. SLADE:

16      Q.   Are you ready, Mr. Goldstein --

17          MR. BERMAN:  No, wrong person.

18          MR. SLADE:  I'm sorry, you're not

19      Mr. Goldstein.  You're Mr. Spitzer.  I

20      have Mr. Goldstein on my mind.

21  BY MR. SLADE:

22      Q.   Mr. Spitzer, are either you or your

23  company currently making any mortgage

24  payments on the 51 East 73rd Street property?

25      A.   I have to check.

Arthur Spitzer
October 29, 2020

Page 69

1          Q.    You don't know?

2          A.    I don't know.

3          Q.    I'm sorry, I didn't hear you.

4          A.    I don't know.

5          Q.    Sir, do you have any other

6     properties that you own either in your

7     individual name or through a company on which

8     you are making mortgage payments?

9          A.    Yes.

10         Q.    So you understand, do you not, that

11    if there's an outstanding mortgage on a

12    property that you own, that you're obligated

13    to pay the bills, correct?

14         A.    Correct.

15         Q.    So why are you not paying the bills

16    with respect to the 900 Park Avenue property?

17         A.    I didn't say it wasn't paid.

18         Q.    Well, my client hasn't received a

19    mortgage payment from you or your company

20    since you took title.  You're aware of that,

21    aren't you?

22              MS. ZELTSER:  Do we have a

23         scheduled settlement discussion for

24         that?  That's why.

25              MR. SLADE:  Okay.  So, Naomi, you

Arthur Spitzer
October 29, 2020

Page 70

```
 1        want me to swear you in, too?
 2   BY MR. SLADE:
 3        Q.   Can you answer my question?
 4        A.   What was the question?
 5        Q.   Well, you have other properties
 6   that you make mortgage payments on, correct?
 7   You told me that.  What I'm asking you:  Why
 8   aren't you paying the bills for the mortgage
 9   payments on this property that you own?
10        A.   That's not my department.  I have
11   to check.
12        Q.   Even though you're the owner of the
13   property and the decision-maker of Central
14   Park Partners, it's not your department as to
15   whether you're paying the mortgage or any of
16   the other bills associated with the property;
17   that's your testimony?
18        A.   Correct.
19        Q.   Okay.  Do you have any plans to pay
20   any of the bills in the future on this
21   property?
22        A.   I have no plans, anything.
23        Q.   What if -- what if there's a
24   problem with the toilet or the electricity,
25   are you planning to fix that?
```

Arthur Spitzer
October 29, 2020

Page 71

```
 1          A.    If it needs to be fixed, yeah.
 2          Q.    Just for clarification purposes,
 3    can you confirm that the owner of the 51 East
 4    73rd Street property is also Central Park
 5    Partners?
 6          A.    I don't recall.
 7          Q.    Do you have any documents which
 8    reflect the fact that Central Park Partners
 9    or you or an entity which you own or control
10    took title to 51 East 73rd Street?
11          A.    I don't know.  Maybe.
12          Q.    If there were documents, where
13    would those documents be?
14          A.    With Mendy Goldstein, in my office.
15          Q.    Is the 51 East 73rd Street property
16    in foreclosure?
17          A.    I don't see what the relevance is.
18                MR. BERMAN:  No, no. To your
19          knowledge, answer his question.
20          A.    I don't know.
21    BY MR. SLADE:
22          Q.    Who would know the answer to that?
23          A.    Mendy Goldstein.
24          Q.    Do you have any particular use in
25    mind for the 900 Park Avenue property such as
```

Arthur Spitzer
October 29, 2020

Page 72

```
 1   either to sell or rent it?
 2        A.    Probably sell it.
 3        Q.    Why do you say "probably"?
 4        A.    Nothing is certain.  This is not
 5   the typical properties that I acquire.
 6        Q.    What are the typical properties you
 7   acquire?
 8        A.    Development projects.
 9        Q.    And so why did you acquire this
10   property if it's not typical?
11        A.    It's like I said, it was an add-on
12   to 73rd Street.
13            MR. SLADE:  Okay.  I have one
14        question for Mr. Berman.  And -- but I
15        want to try to understand about
16        Mr. Berman's role in this case.  I know
17        you've appeared at deposition
18        representing two officers -- or one
19        officer and an authorized agent for
20        Central Park Partners.
21            Are you making an appearance in
22        this case, Mr. Berman?
23            MR. BERMAN:  I'm of counsel to
24        Ms. Zeltser.
25            MS. ZELTSER:  Do you want him to
```

Arthur Spitzer
October 29, 2020

Page 73

1   file a notice of appearance of "of

2   counsel" to my office?

3        MR. SLADE:  I didn't say that.  I

4   just want to understand what his role

5   is.

6        MR. BERMAN:  I am of counsel.  I am

7   hired on a per diem basis when

8   Ms. Zeltser feels that she needs my

9   services.

10        MR. SLADE:  Okay.  I have no

11   further questions of the witness at this

12   time subject to our filing a motion to

13   compel answers to the questions for

14   which instructions were made not to

15   answer.

16        (Continued on next page to include

17   jurat.)

18

19

20

21

22

23

24

25

Arthur Spitzer
October 29, 2020

Page 74

1          MR. SLADE:  So thank you very much,

2       Mr. Spitzer, it was nice meeting you.

3       I'm sure I'll meet you on some other

4       terms.  Madam Court Reporter, Ms.

5       Takahashi, thank you very much.  Naomi,

6       we'll talk again.

7              And we can go off the record for a

8       minute.

9              (Discussion off the record.)

10             (Time noted:  2:32 p.m.)

11

12

13                  _____

14                  ARTHUR SPITZER

15

16   Subscribed and sworn to before me

17   this_____ day of _____, 2020.

18

19   _____

20

21

22

23

24

25

Arthur Spitzer
October 29, 2020

Page 75

1

2                    CERTIFICATE OF OATH

3
    THE STATE OF NEW YORK)
4                        )
    COUNTY OF NEW YORK   )
5

6

7            I, the undersigned authority,

8    certify that ARTHUR SPITZER appeared via Zoom

9    and was duly sworn on October 29, 2020.

10

11           Signed this 2nd day of November

12   2020.

13

14

15

16   _____
         Tami H. Takahashi, RPR
17       Registered Professional Reporter
         Notary Public - State of New York
18       My Commission No.  01TA4964494
         Expires:  November 26, 2022
19

20

21

22

23

24

25

Arthur Spitzer
October 29, 2020

Page 76

1              CERTIFICATE OF REPORTER

2

THE STATE OF NEW YORK)
3                    )
COUNTY OF NEW YORK    )
4

5

6    I, TAMI H. TAKAHASHI  Registered Professional

7    Reporter, certify that I was authorized to

8    and did stenographically report the

9    deposition of ARTHUR SPITZER, Pages 1 through

10   76; that a review of the transcript was not

11   requested; and that the transcript is a true

12   and complete record of my stenographic notes.

13           I further certify that I am not a

14   relative, employee, attorney or counsel of

15   any of the parties, nor am I a relative or

16   employee of any of the parties' attorneys or

17   counsel connected with the action, nor am I

18   financially interested in the action.

19

20           Dated this 2nd day of November 2020.

21

22

23   _____
     Tami H. Takahashi, RPR
24   Registered Professional Reporter

25

Arthur Spitzer
October 29, 2020

1

## $

**$140,000**
63:2

**$2,000,000**
63:1

**$25**
20:7 31:24
32:16

**$250,000**
39:7,21,25
41:3,4,10
50:20

## 0

**07036**
10:10

**08755**
10:4

## 1

**10**
27:22 68:4

**15**
12:2

**1500**
10:9

**191-1**
58:5

## 2

**2**
52:13 53:25

**20**
61:25

**2016**

12:2

**202.7**
7:10

**2020**
20:10 26:5
53:25 74:17

**2370**
10:3

**250**
39:6

**2:32**
74:10

## 3

**3**
52:18 53:5,19
58:22 68:7

**319**
7:9

## 5

**5**
27:22 58:13
68:4

**50**
52:25

**51**
16:2,6 17:9,
11 20:13,19
21:4,15 24:14
27:15 28:14
29:5,13,23
30:6 31:23
32:9,13 38:8
39:11 43:5
55:25 65:11,
15 68:24
71:3,10,15

## 6

**6/29/20**
57:18

**6/29/2020**
58:7

## 7

**7**
60:9 65:18,21
66:14

**73rd**
15:25 16:2,7
17:9,11
20:13,19
21:4,15 24:14
26:10 27:15
28:14 29:5,
11,13,24 30:6
31:24 32:9,13
38:9 39:11
43:6 55:25
65:11,15
68:24 71:4,
10,15 72:12

## 8

**8**
62:25 63:11

## 9

**9**
63:22

**900**
12:25 13:25
15:8 20:14,23
25:13,19
26:8,11 27:16

28:15 29:6
30:2 31:21
33:1,7,14
35:15 38:9
39:11 40:22,
23 41:14
42:23 43:6
47:9 49:6,23
50:2 55:1,22,
25 65:13
69:16 71:25

## A

**accomplish**
37:12

**accomplishing**
62:14

**accordance**
59:24

**accruing**
47:19

**acquire**
17:14 26:8
72:5,7,9

**acquired**
20:18 41:13
49:6 50:24
51:7

**acquisition**
17:15 38:9,10
39:10

**acquisitions**
16:24

**Act**
7:9

**action**
58:24 59:3,22
63:13,23
65:24 67:4

Arthur Spitzer
October 29, 2020

2

add-on
26:11 72:11

additional
48:11

additionally
64:2

address
10:2,8 16:1
54:5,8,10

adequately
59:2

administered
8:23

advice
64:10,11,21

affidavit
57:14,20
58:16,22

affiliated
17:14

affirmative
65:19 66:9,
16,20 67:1

afraid
62:16

afternoon
7:20,24 9:11

agent
72:19

agree
21:10 39:22

agreed
15:10

agreement
39:14,15
41:3,9,10

ahead
17:20

aid
30:25

allowed
18:3,7 61:17

allowing
13:12

Alternatively
59:21

amateur
19:1

amended
45:21,23
53:21,24

amount
63:25

analysis
48:20

Android
56:11

answering
64:20

answers
73:13

apartment
28:1,5

appearance
46:23 72:21
73:1

appeared
72:17

applicable
59:24

argue
14:22

arguing
14:24

argument
23:22

argumentative
14:15,20,25
23:19,22
24:10

arrears
63:25

ARTHUR
74:14

Arthur@
deutschequity.
com.
54:12

asks
9:20

asserted
66:9

assessments
42:1,3,22
43:3 67:17

association
67:16

assume
49:12

attended
28:5

attending
27:25

attorney
8:12 10:14
11:4 18:7
19:20 30:21
56:24 59:15
60:5 66:21

attorney's
37:6 48:6,11,
18 58:23

attorneys
49:20

audibly
8:7

authorized
72:19

Avenue
12:25 14:1
25:14,19 26:8
27:16 28:15
29:6 30:2
31:21 33:2,7,
14 35:15
38:10 39:12
40:22,23
41:14 42:24
43:6 47:9
49:6,23 55:1
65:13 69:16
71:25

aware
13:24 14:3
33:19 34:17
35:15,21,24
36:7,22 47:8,
14,18,22,25
48:4,12,18
49:24 59:17
69:20

---

**B**

---

back
15:2 18:17
19:17 23:2
50:17 51:2
55:5

based
58:25

basis
13:16 43:18
73:7

beauty
12:8

beginning
11:11 14:2
20:9

behalf
60:20 61:3

believes
65:5

Berman
8:12 9:3,7,
15,19 10:17
13:4,8,10,14,
17 14:12,14,
15,16,19,22
16:20 17:19,
23 18:1,5,11,
15,21,23
19:3,8,10,13,
14,19 22:2,6,
11,13,16,22
23:18,25
24:1,5,8 25:4
28:12 30:23
31:3,7,10,12,
16 33:3 42:6
44:6,10,14,
17,21,23
45:4,12,16,
19,23 46:1,6,
9,12,22 51:20
52:19,24 53:6
56:13 57:1,5,
10,16,23
58:2,4,7,10
59:6 61:8,11,
14,18,22
62:4,10,13,20
65:21 68:1,17
71:18 72:14,
22,23 73:6

Berman's
72:16

bills
69:13,15
70:8,16,20

Blancke
10:9

bought
17:18 19:23
25:21

break
67:23 68:1,8

bricks
29:20

Bring
14:18,21

broken
13:18

build
29:10

building
17:1 24:21
30:16

built
29:7

business
10:6,8,11
11:13,24,25
12:2,5 27:14
38:5 43:8
49:17 54:11
64:21

---

**C**

called
7:14 12:14
26:1 56:10
66:15

calls
10:20

camera
8:22 30:20
31:11,14

caption
45:22,24

case
13:19 31:19
37:7,11 38:4
44:5 45:4,11
46:23 48:11
52:9 57:14
59:18 63:20
64:7,17 67:12
72:16,22

caused
26:4

causing
48:11

cell
56:5,7,12,25
57:10

Central
26:1 33:11
34:10,23 37:6
40:2,14 42:21
43:23 46:15,
24 47:11
49:13,16
59:21 65:4,
10,14,23
70:13 71:4,8
72:20

CEO
11:19

challenged
67:6

change

49:3

check
42:25 48:22
57:17 68:25
70:11

checkbook
14:18,21

checking
57:21

Circle
10:3

circles
62:14

city
15:23

claimed
64:2

clarification
71:2

clear
8:2,15 42:18
44:25 45:7

client
38:4 45:3
56:18 67:23
69:18

client's
56:16

closeouts
12:8

coach
19:13,15
22:14

coaching
19:12 22:16

college
12:11

comments
  42:10

committed
  41:11

company
  21:4,15 26:1,
  4,7 32:8
  34:2,3,25
  35:6 40:1,4,8
  43:7 50:12
  68:23 69:7,19

compel
  73:13

computer
  53:13

condominium
  12:24 13:25
  26:9 42:2,22
  43:2 67:16

confidential
  56:20

confirm
  71:3

connection
  37:25 50:12
  51:24 52:1

consideration
  32:25 33:6

considered
  15:19

contact
  67:16

continued
  37:10 48:10
  73:16

continues
  19:10

control

71:9

conversation
  27:19,20
  28:18,20

conversations
  27:22,23

copy
  9:2,8,12 52:7
  53:20

copying
  53:24

correct
  12:25 15:11
  17:7 18:1,2
  20:11,20,21,
  24 25:9 26:5,
  6 29:24,25
  30:3,12
  33:14,15,17,
  18,19,20,23,
  24 34:25
  35:1,9,10
  36:9 38:18,19
  39:7,8,13
  40:3 41:11
  43:24 44:3
  47:12,16,20,
  23 48:6 58:9
  60:8,24
  63:20,21
  69:13,14
  70:6,18

correspondence
  54:25 55:16,
  20,24 56:17

counsel
  46:21 63:12
  72:23 73:2,6

court
  8:5,14 9:13

22:10 33:22
34:18 37:16
44:2,19 45:1
47:11,14
49:21,22
59:12 61:22
68:7 74:4

current
  21:5,9,16
  24:23 25:8,15

_____

D

D-E-U-T-S-C-H
  54:14

date
  11:12 57:21
  58:5

dated
  53:25 57:17

day
  14:24 74:17

deal
  15:20 32:18
  40:6

dealings
  27:14

deals
  43:5,8

debt
  15:18 24:20
  31:25 32:16
  38:16,21

decision-maker
  35:8 70:13

default
  21:25 23:7
  47:23 48:1,17
  63:25

defaulting
  63:15

defend
  46:8 59:23
  64:7

defendant
  44:1 45:20
  46:2,7 47:1
  63:15

defending
  63:19

defense
  44:5 45:4,11
  59:18

defenses
  65:20 66:9,
  16,20 67:1

department
  70:10,14

deposing
  9:11

deposition
  7:4 10:21
  22:24 23:23
  24:3 34:20
  46:14,24
  52:14 53:5
  54:16,20
  57:25 58:13
  72:17

Deutsch
  11:14

developer
  15:20

development
  10:13 11:24
  12:2 16:25
  29:2,11 31:20
  32:18,23 72:8

DI
13:8 14:12
44:10 45:12
57:10

diem
73:7

dilapidated
29:19

disclosed
50:23 51:6

discuss
28:1,6 34:12,
15 66:21

discussed
16:4 29:2
30:5,15 68:5

discussing
29:23

discussion
69:23 74:9

dismissed
58:24 59:12
63:24

distress
15:17,21
21:21,24 23:5
24:15

docket
67:10,12

document
52:15 58:5,12
59:7 66:2,5,
12

documents
16:17,23 17:4
37:1 71:7,12,
13

dot-com
54:15

doubt
38:3

driver's
9:2,8,19,21

drivers's
9:10

due
64:9

duly
7:15

_____

**E**

E-Q-U-I-T-Y
54:14

earlier
28:11 60:16

easier
8:14

East
16:2,7 17:9,
11 20:13,19
21:4,15 24:14
27:15 28:14
29:5,11,13,23
30:6 31:24
32:9,13 38:8
39:11 43:6
55:25 65:11,
15 68:24
71:3,10,15

eaten
48:16

effort
42:1,22
54:17,21,24

efforts
41:15,20
67:15

electricity
70:24

email
54:4,7,10
55:15

emails
54:18,22,25
55:6,13,19,23

Emergency
7:8

employed
10:5

employee
14:4

encumber
37:1

end
11:11 58:19

Ender
26:16,21,24
36:20 38:4,18
43:9,16,20
49:14,18,23
50:2,19,22
51:6 55:17

Ender's
28:1,5

enjoy
17:1

entered
46:10

entitled
56:14

entity
16:10,12,18
17:13 48:24
49:14 67:8
71:9

equity
11:14 48:15

estate
10:13 11:24
12:1 28:2,6
29:14 43:2

estimate
28:22

exact
11:12

EXAMINATION
7:18

examined
7:16

Executive
7:10

Exhibit
52:13,18
53:5,19 58:13
65:18,21
66:14

existence
29:8 50:25
51:8

exists
67:12

expended
48:12

explain
38:7

_____

**F**

fact
40:9 71:8

failure
58:25 59:16

fair
8:3 30:2

Arthur Spitzer
October 29, 2020

6

false
 60:19
familiar
 12:23 13:1
favor
 17:22 31:1
February
 11:11
federal
 18:6 33:22
 34:18 37:15
 44:2 47:11
feel
 64:20
feels
 73:8
fees
 37:6,15 48:6,
 11,18 63:2,12
 64:1,8,18
felt
 15:20
field
 32:21
fighting
 37:15
file
 59:1,17 73:1
filed
 51:16 52:8
 53:9 65:23
 67:12
filing
 51:24 53:23
 58:5 73:12
filling
 51:15
finances

40:6
financials
 32:19
find
 55:13,21,22
 56:2
finding
 53:21
fine
 9:15,16 14:23
 24:5 42:9
finish
 8:10 67:24
Fiscusel
 46:10
fix
 70:25
fixed
 71:1
focus
 16:5,6
foreclosed
 67:5
foreclosure
 47:12 59:23
 63:13,20
 67:4,6 71:16
foreseeing
 68:9
Forest
 10:3
formed
 26:5
foul
 31:4
free
 17:18 19:23

fully
 58:23
funding
 40:13
funny
 64:23,24
future
 70:20

---

**G**

gave
 61:15
give
 9:20 28:22
 53:14 56:25
giving
 58:2,4
Goldstein
 14:4 16:4
 17:2 21:19
 25:7 28:4,8,
 13 30:5 32:7
 34:16 36:11
 37:21 39:18
 40:15 41:24
 43:7,14 49:12
 50:16,23 51:7
 52:14 55:1
 58:14 67:20
 68:16,19,20
 71:14,23
Goldstein's
 43:19
good
 7:20 15:20
 22:11 47:4
 62:22
graduate
 12:10

grants
 47:15
gravely
 63:24
grounds
 45:6
guess
 16:20 37:22

---

**H**

handle
 16:24 17:2
happy
 42:14
He'll
 22:7
head
 8:6
health
 7:9 12:8
hear
 30:21 36:13
 57:4 61:7,15,
 19 62:8 69:3
heard
 29:15,16
 42:17 44:19
hearing
 30:25 68:7
held
 7:5 47:10
high
 12:13
higher
 64:8,18
hire
 50:11,14
 63:12

hired
  50:14,15 73:7
hold
  10:17 53:14
holding
  46:2,7
home
  10:2
hoping
  37:11

**I**

I-M-R-E-I-A
  12:19
idea
  38:6 40:8
  41:22 51:13
  65:8
identification
  53:19 65:18
  66:15
illustrated
  58:23
impress
  62:23
impressing
  62:18,21
improper
  13:5
Imreia
  12:15,19
inappropriate
  18:22
include
  46:15 73:16
incur
  63:12

independent
  63:7
individual
  21:3 25:18,24
  67:7 69:7
information
  23:24 57:9
inquire
  21:2
inquired
  21:14
inquiry
  25:14
instruct
  57:8
instructed
  45:5
instructing
  14:17 44:12
  45:17
instructions
  73:14
insurance
  50:9,11
interest
  47:19 48:2,17
  63:25
interrupt
  22:23,24
  62:11
interrupted
  28:12
interrupting
  18:24
interruption
  8:21 10:22
  11:21 53:16

intervene
  59:22
intervenor
  47:1
investors
  40:19,21,23,
  24
involved
  17:17 25:1
  26:20 29:22
  34:19 41:18
  67:3
involvement
  51:24
issue
  38:23
issued
  49:23 50:2
issues
  28:2,6

**J**

Jersey
  10:4,10
job
  46:5 52:3
  62:23
Joel
  51:12
judge
  13:22 30:9
  46:9
judgment
  47:15 64:3
July
  36:5 53:10,25
June
  36:5

jurat
  73:17

**K**

kind
  56:7
knew
  20:19,22
  21:1,7 24:13,
  16 34:5 35:19
Knowing
  34:1
knowledge
  63:8 71:19

**L**

larger
  15:12
law
  18:6 58:24,25
laws
  59:24
lawsuit
  7:22 12:25
  33:22 34:18
  35:21,24
  36:8,25
  37:16,25 44:1
  46:25 47:12
  50:25 51:9
  56:21 59:11
lawyer
  44:11 63:6
learn
  36:10
learned
  18:4,6 36:25

legal
  16:25 37:15
  44:7 45:6
  63:2,12 64:1
lender
  32:3
liability
  34:25 37:24
license
  9:2,8,10,20,
  22
life
  8:13
limited
  34:24
Linden
  10:9
lis
  21:11 59:1,17
  60:11,22
Listen
  62:13,16
litigation
  37:10 48:10
LLC
  25:23
loan
  37:1 38:3,5
  49:22 50:1,6
  63:1
located
  13:25 16:23
long
  11:23 68:1
longer
  64:7,17 68:10
looked
  37:3

lose
  47:15
lot
  38:23 39:21

————————————

M

Madam
  74:4
made
  38:3 41:14,20
  42:1 46:22
  48:20 67:15
  73:14
main
  16:5,6 38:23
maintenance
  38:24
make
  8:12,13 9:5,
  12 25:14
  30:16 42:10,
  17 44:18
  54:17,21,24
  56:15 70:6
making
  42:21 68:23
  69:8 72:21
manager
  35:5 48:25
manner
  30:20 44:25
March
  11:12 14:2
  20:9,10 26:5
marked
  52:12,13,18
  53:4,19 57:24
  58:12 65:17
  66:14

matter
  58:25
maximize
  30:17
Meaning
  14:9
means
  14:10 22:19
  24:9 50:5
  61:1
meant
  21:25 22:3,4,
  6 23:6
meet
  74:3
meeting
  27:25 28:5
  74:2
member
  67:7
Memorandum
  58:23
Mendy
  14:4 17:2
  21:19 32:7
  34:16 36:11
  37:21 39:18
  41:24 49:12
  50:16 52:14
  55:1 58:13
  67:20 71:14,
  23
mentioned
  36:11
messages
  56:4
met
  11:5 26:21
  27:1

middle
  19:6,11 42:11
million
  20:7 31:24
  32:16
mind
  68:20 71:25
minute
  74:8
minutes
  68:4
miscellaneous
  64:1
mistake
  60:25
money
  17:16 26:12,
  13 37:14
  38:24 39:21
  40:8 41:4
monies
  39:19
Monique
  27:1,4,8,13,
  20 36:16
  43:9,12,15,19
  49:18 55:24
month
  55:11
monthly
  42:1,2
months
  27:10
mortgage
  20:2,5,20,23
  21:5,9,16
  22:1 23:7
  24:23 25:8,15
  32:9,17 33:1,

7,16,23 34:4,
6,10 35:15,
17,18 47:19,
23 48:1,5
65:7 68:23
69:8,11,19
70:6,8,15

**mother's**
27:15

**motion**
73:12

**mouth**
22:18

**move**
65:2

---

**N**

---

**named**
45:20

**Naomi**
11:1 36:16,19
42:10 46:21
55:5 69:25
74:5

**National**
7:8

**nice**
74:2

**nods**
8:6

**nominee**
35:11

**notary**
7:4,10,16

**note**
13:20 17:23
42:7 48:5

**noted**

74:10

**notice**
46:14 52:8
53:7,20,21,
23,24 59:3
73:1

**noticing**
46:16

**number**
56:12,25 58:1

---

**O**

---

**oath**
8:24

**object**
9:3 52:22
57:1,5

**objection**
8:12 13:4
14:12 22:2
25:4 44:6,24
45:12 56:13

**objections**
62:17

**objective**
37:9

**objectives**
37:17

**obligated**
69:12

**obtain**
32:2

**obvious**
18:20

**occur**
20:8

**offer**
39:9

**office**
11:10 16:16
17:5 67:20
71:14 73:2

**officer**
72:19

**officers**
72:18

**opportunity**
15:16 36:24

**oral**
39:14 41:10

**order**
7:10 46:10
59:2,22 60:17
61:4

**ordered**
60:12,20,23
61:3

**outstanding**
67:17 69:11

**overleveraged**
24:17,19

**owed**
38:23 39:5

**owner**
25:25 33:11,
13 34:1,2,11,
23 35:2,12,13
40:5 42:23
43:1,23
48:23,25
70:12 71:3

**owners**
26:14,15,18

**owns**
65:10,14

---

**P**

---

**p.m.**
74:10

**package**
52:19

**pages**
52:25

**paid**
33:2,8 34:6
39:19 40:9,
10,11,12 49:7
69:17

**paper**
46:2

**papers**
46:6

**paragraph**
58:22 60:9
62:25 63:11,
22

**Park**
12:25 13:25
15:8 20:14,23
25:13,19
26:1,8,11
27:16 28:15
29:6 30:2
31:21 33:1,7,
11,14 34:10,
23 35:15 37:6
38:9 39:11
40:2,14,22,23
41:14 42:21,
23 43:6,23
46:15,24
47:9,11 49:6,
13,16,23 50:2
55:1,22,25

59:21 65:5,
10,13,14,23
69:16 70:14
71:4,8,25
72:20

**part**
15:12 29:3
39:10 51:21
67:7

**parties**
7:11

**partner**
11:17

**partners**
26:1 33:11
34:10,24 37:6
40:2,14 42:21
43:24 46:24
47:11 49:13,
16,17 65:5,
10,14,23
70:14 71:5,8
72:20

**parts**
32:19

**party**
46:25 63:13

**passport**
9:17

**patient**
23:1

**pay**
34:4,9 38:15,
21 39:9,24
40:1 41:2,3,9
42:2,22 50:19
69:13 70:19

**paying**
32:9,17 37:5

43:3 69:15
70:8,15

**payment**
69:19

**payments**
68:24 69:8
70:6,9

**pendency**
52:8 53:8,20,
22,24

**pendens**
21:11 59:1,17
60:11,22

**pending**
18:10 31:6,8
33:22 34:18
42:16 44:2

**people**
34:12,14
37:19,20

**permission**
32:3

**person**
7:13 35:12
68:17

**personal**
27:12 37:24
38:16,20 39:1

**personally**
40:15

**phone**
10:20 26:24
27:5,8 56:5,
7,12,25 57:10

**phrase**
44:25

**physically**
42:5,7

**piece**
14:6 29:14
43:2

**place**
20:12 49:4
54:16,20

**plaintiff**
7:22 62:25
64:2

**plaintiff's**
58:25 65:6
66:14

**plan**
34:9

**planning**
34:4 70:25

**plans**
32:24 70:19,
22

**plural**
26:17

**point**
30:19 35:14,
20 68:9

**position**
11:15 49:21,
22 63:18 65:4

**possessing**
61:12

**potential**
30:15

**predatory**
49:24 50:3,6

**predecessor**
50:3

**prejudiced**
63:24

**prepare**

13:19

**prepared**
63:11

**present**
42:5,8

**preserve**
59:22

**previously**
52:12 57:25
58:12 65:6,18

**prior**
53:4 60:12,23

**priority**
65:7

**problem**
42:12 70:24

**procure**
32:2

**products**
12:9

**professional**
7:3 27:13

**project**
29:12

**projects**
72:8

**proper**
24:10

**properly**
59:1

**properties**
27:15 28:14,
19 29:4 38:25
39:11 69:6
70:5 72:5,6

**property**
14:6 15:11,
17,18,21,22,

23 16:3,8
17:14 20:3,
19,24 21:16,
21,25 23:6
24:15 25:8,
14,17,19,22
29:24 30:2,6
31:21,24
32:10,13,14,
15 33:2,8,14,
17,23 34:3
35:16,25 37:1
40:22 41:14
42:24 47:10,
16,20 48:16,
21,24 49:6
50:9,13,24
51:8,15,19,25
52:2 55:2
59:2 60:13,24
65:7,9,13,14,
15 67:5 68:24
69:12,16
70:9,13,16,21
71:4,15,25
72:10

**proposed**
64:3

**provide**
9:1,7 57:8
59:2

**provision**
48:1,5

**public**
7:4,9,16
20:25 21:6
25:16 67:13

**pull**
53:12

**purchase**

15:10 16:7,18

**purchased**
25:17 35:24

**purchasing**
15:17 60:13,
23

**purpose**
9:4 26:7,10

**purposes**
56:20 71:2

**pursuant**
7:8

**put**
22:17 23:20

---

**Q**

**question**
8:11 13:5,13,
15 15:2,3,7
17:19,25
18:10,12,16,
18 19:12,18,
21,22,25
22:21 23:3,4,
10 24:6,11
28:12 30:10,
14,25 31:6,7
33:4,25 34:8,
9 37:22 40:17
42:11,16,18
43:22 44:21
45:7 50:17
51:4,21
52:21,23
61:25 64:14,
16,19 65:1
70:3,4 71:19
72:14

**questioning**

18:25

**questions**
7:23 8:1
13:11 19:7
23:19 61:13
73:11,13

**quote**
17:24 45:6

---

**R**

**re-sent**
46:18

**read**
15:1,3 18:17
19:17,22
23:2,4 51:2,4
59:6 60:9

**ready**
68:16

**real**
10:13 11:24
12:1 28:2,6
29:14 43:2
51:15,25

**realize**
37:23 64:6,
15,22

**reason**
19:1 38:2

**recall**
11:12 15:8
16:13 25:20,
23,24 27:9,
18,21,24,25
28:21,25
35:22 36:2
38:22 39:20
52:3,10 54:9
55:8,10,12

57:13 61:6,8,
10 66:4,5,7,
24 71:6

**received**
69:18

**recess**
68:14

**recognize**
58:18 66:8

**record**
8:15 13:21
17:24 18:3,8,
14 19:9,11
21:6 30:13,22
31:4 42:7,18
44:16,22,24
45:8 46:21,22
62:18 68:13
74:7,9

**recorded**
65:6

**records**
20:25 25:16
56:16 67:13

**redacted**
9:8

**refer**
52:12

**referring**
57:19 58:8

**reflect**
16:18 19:10
44:23 71:8

**refuses**
44:23

**refusing**
30:13

**Registered**
7:2

rehab
29:15,23
30:1,5 32:15

related
12:6 49:13

relationship
27:13 38:8
43:19

relevance
40:16 71:17

relevant
30:7,9,11
41:6

remember
21:21 27:11
28:15

remotely
7:7

rent
41:20 72:1

repeat
33:3 61:21
62:7

repeats
61:23

rephrase
65:12

report
51:16,25
60:12,18,23

reporter
7:1,3 8:5,14
9:13 12:16,21
44:19 45:1
61:22 62:5
74:4

represent
7:21

represented
36:16,20

representing
72:18

request
63:23

requested
63:2

requesting
63:1

respect
20:3,23 37:10
51:14 55:16
64:9 69:16

respectfully
63:23

retained
11:9,10

review
36:25 66:18

reviewed
67:10

reviewing
59:7

rights
59:23 60:3

River
10:3

RL
13:20 49:23
50:2

Roger
7:21 10:17
13:4 44:21
57:19 68:2

role
51:14,23
72:16 73:4

room
7:6

Rosenzweig
51:12

ruling
22:9

_____

_____

        S

sale
51:19 52:1

Samsung
56:9

scary
49:4

scheduled
69:23

school
12:13

search
50:12 54:17,
21,25 55:15,
19,23 56:16

searched
55:20

Section
7:8

seeks
59:21

sell
41:15 72:1,2

sentence
59:20 63:10

separate
53:13

Service
7:9

services

11:9 73:9

settlement
69:23

shoes
63:14

show
9:13 45:19
52:17 53:18
58:14 65:17

showed
25:16

showing
9:21 53:1,3

shown
57:16 67:11

shows
20:25

signature
58:19

signing
57:13

Silberman
27:2,5,8,14,
20 36:17
43:9,12,15,20
49:18 55:24

similar
67:4

Simone
26:16,21,23
28:1 36:20
38:3,18 43:9,
16,20 49:14,
18,23 50:2,
19,22 51:5
55:17

Simultaneously
20:15,16

Arthur Spitzer
October 29, 2020

13

sir
  10:14 11:24
  12:23 18:10
  24:13 30:12
  33:10 43:23
  46:12 47:8
  48:23 54:4
  56:12 57:4,13
  61:9,16 64:13
  66:3,6 69:5
sitting
  28:23 47:9
Slade
  7:19,21 8:17,
  25 9:5,9,23,
  25 10:19,23
  11:22 12:22
  13:6,9,12,16,
  20,23 14:14,
  16,21 15:1,6
  16:22 17:22
  18:2,9,13,17,
  22,24 19:5,9,
  15,24 22:8,
  12,20,23
  23:9,25 24:2,
  7,12 25:6
  30:18 31:1,5,
  10,13,17,18
  33:5 42:9,14,
  20 44:8,15,
  18,22 45:9,
  14,17 46:9,
  17,20 47:4,7
  51:2,11,22
  52:20 53:3,7,
  11,17 56:15,
  22 57:3,7,11,
  12,20,24
  58:3,6,9,11
  59:8 61:9,11,

  16,20,24
  62:6,11,16,
  22,24 65:22
  67:22 68:3,
  12,15,18,21
  69:25 70:2
  71:21 72:13
  73:3,10 74:1
sold
  12:8
sole
  35:2 48:25
speak
  14:11 18:3,7,
  13 19:11
speaking
  19:6,8 62:17
spell
  12:17 54:13
spend
  9:10
spending
  37:14
Spitzer
  7:20 9:1,6
  10:1,24 30:18
  45:3,10 56:18
  57:21 60:3
  68:19,22
  74:2,14
spoke
  27:8
spoken
  26:23 27:4
  28:13
stand
  23:20
started
  32:22

state
  7:3 44:15
  51:16 52:1
statement
  60:14
STENOGRAPHIC
  7:1 12:16,21
step
  63:14
stepped
  8:21
stipulate
  7:11 46:20
  47:1
street
  10:9 15:25
  16:7 17:10,11
  20:13,19
  21:5,15
  24:14,21
  26:10 27:15
  28:14 29:6,
  13,24 30:6
  31:24 32:10,
  13 38:9 39:11
  43:6 55:25
  65:11,15
  68:24 71:4,
  10,15 72:12
strictly
  16:25
stuff
  12:9 16:25
  17:3 41:19
subject
  12:24 73:12
Subscribed
  74:16
summary

  47:15
summertime
  36:4,6
supposed
  39:24 40:9
swear
  8:17,18 62:3
  70:1
sworn
  7:7,12,15
  74:16

——————————

T

Takahashi
  7:2 74:5
taking
  14:5
talk
  28:8 67:23
  74:6
talking
  46:13
Tami
  7:2
taxes
  49:7,9
telephone
  10:22
telling
  21:22 28:16
  49:1
temple
  43:11,15
tenant
  34:6
tenth
  62:12

Arthur Spitzer
October 29, 2020                                                                14

terms
  17:8,12 74:4

testified
  7:16 21:20
  28:11 34:22
  60:16

testimony
  7:11 23:17
  70:17

text
  56:4,17

thing
  44:7 52:24
  59:6

things
  34:1 49:3
  66:15

thinking
  19:4

thought
  19:19

throw
  19:2

time
  8:19 11:5
  15:18 22:25
  27:7 56:24
  62:5,12 73:12
  74:10

times
  61:25

title
  11:18 20:18
  21:3,7,9,15
  26:8 31:23
  32:14 47:10
  50:8,11
  60:12,18,23
  69:20 71:10

today
  11:7 28:23
  47:9 54:17,
  19,21 60:17

toilet
  70:24

told
  8:20 14:4
  30:24 63:6
  70:7

Toms
  10:3

tops
  68:4

Totally
  18:22

transaction
  15:13,15 17:9
  20:13,14

transactional
  32:20

transfer
  49:9 51:15,25

trial
  23:21

true
  22:1 23:8,13
  24:13 26:2
  60:14,18

trust
  37:19

type
  12:9 30:4

typical
  72:5,6,10

─────────────
          U
─────────────

um-hum

  8:6

understand
  7:25 8:2,8
  14:10 23:16
  30:13 48:8
  52:21 66:11
  69:10 72:15
  73:4

understanding
  37:17 45:2

undeveloped
  29:14

unit
  12:24 13:25

─────────────
          V
─────────────

vague
  13:18

validate
  65:6

valued
  15:19 24:21

videoconference
  7:5

voice
  44:24

─────────────
          W
─────────────

wait
  42:11

wanted
  26:12,13
  38:15,21

waste
  14:23

weeks
  55:9

West
  10:9

whatnot
  40:20

whispering
  30:22,23

withdrawn
  36:23 65:11

words
  8:6 22:17

working
  32:24

worth
  31:25 32:16
  49:2

writing
  41:11

written
  39:15

wrong
  29:8 68:17

─────────────
          Y
─────────────

Y-E-S-H-I-V-A
  12:19

Y-O-S-E-F
  12:20

Yeshiva
  12:14,18

York
  7:3 34:24
  44:2 49:3
  51:17 52:1

Yosef
  12:15,20

Arthur Spitzer
October 29, 2020

---

**Z**

---

**Zeltser**
11:1 36:16,19
42:4,6,12
44:12 45:21,
25 46:4,13,19
47:3,6 68:6,
11 69:22
72:24,25 73:8