UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RL 900 PARK, LLC,

                              Plaintiff,

              -against-

SIMONE ENDER, et al.

                              Defendants,

              -and-

CENTRAL PARK PARTNERS NY LLC

                              Intervenor-Defendant.

---

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__2/25/2021___

1:18-cv-12121 (MKV)

**OPINION AND ORDER**

MARY KAY VYSKOCIL, United States District Judge:

       This is a commercial mortgage foreclosure case brought by RL 900 Park, LLC ("RL"), an

entity related to Rok Lending, LLC, which purports to be the assignee of a mortgage and the

holder of the related promissory note both entered into by Defendant Simone Ender.  The

mortgage encumbers a New York City condominium originally owned by Ender as an

investment and rental property.  After the case had been pending for more than year and before

any judgment was entered, title to the property at issue was transferred to Intervenor-Defendant

Central Park Partners NY LLC ("CPP").  All Defendants other than CPP have defaulted or

stipulated to judgment against them.

       Before the Court are RL and CPP's cross-motions for summary judgment.  By its Motion,

RL seeks a final judgment of foreclosure against all Defendants, which would then allow the

case to proceed to a foreclosure sale.  In doing so, RL seeks to strike substantially all affirmative

defenses raised by CPP as a bar to judgment.  CPP, on the other hand, seeks dismissal of this

case in its entirety on the basis of certain of those affirmative defenses.  Each of RL and CPP

also have filed motions for Rule 11 sanctions against the other, alleging that the other has raised frivolous legal arguments.

For the reasons that follow, RL's motion for summary judgment is DENIED, CPP's motion for summary judgment is GRANTED, and the cross-motions for sanctions are DENIED.

## BACKGROUND

The facts as stated herein are drawn from the Parties' Statements of Material Facts pursuant to Local Rule 56.1.  *See* Plaintiff's Rule 56.1 Statement in Support of its Motion, ECF No. 235 ("Pl. Facts"); Central Park Partners' Counterstatement of Facts in Opposition, ECF No. 241 ("Def. Counter"); Central Park Partners' Statement of Facts in Support of its Motion, ECF No. 242 ("Def. Facts").  Citations to the Local Rule 56.1 Statements incorporate by reference the documents and deposition testimony cited therein.

RL failed to file a Counterstatement of Facts along with its Opposition to CPP's Motion. As a result, the Court accepts the facts as stated in CPP's Statement of Facts as true unless contradicted expressly by the content of RL's previous Local Rule 56.1 filings.  *See Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party then fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted." (citing S.D.N.Y. Local Rule 56.1(c))); *Biberaj v. Pritchard Indus., Inc.*, 859 F. Supp. 2d 549, 553 n.3 (S.D.N.Y. 2012) ("A nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible." (internal quotation mark omitted) (quoting *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009))).  Similarly, where facts stated in a party's Local Rule 56.1 Statement are supported by testimonial or documentary evidence, and denied with only a conclusory statement by the other party, the Court finds such facts to be true.  *See* Local Rule 56.1(c), (d).

In February 2018, Defendant Simone Ender entered into a Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing (the "Mortgage") with Rok Lending, LLC.  *See* Pl. Facts ¶ 1.  The Mortgage provides in relevant part that "the proceeds of the loan are to be used solely for business or commercial purposes and not for personal, family or household use."  Pl. Facts ¶ 4.  The mortgage was recorded on February 28, 2018, and encumbers a condominium located at 900 Park Avenue, Unit 6A, New York, New York (the "Property").  Pl. Facts ¶¶ 2-3.  Rok Lending later assigned the Mortgage to RL and recorded the assignment with the New York County clerk.  Pl. Facts ¶ 7.

In the fall of 2018, Ender defaulted on the Mortgage by failing to make payments as due in September and has not made any further payments on the Mortgage since then.  Pl. Facts ¶ 14.  Ender received two Notices of Default in October and November 2018, from Rok Lending and RL respectively, each specifying a period in which to cure her defaults (*i.e.* pay the amounts past due on the Mortgage).  Pl Facts ¶¶ 17-18.  When Ender failed to cure the defaults by the deadlines included in the notices, RL accelerated the loan pursuant to the terms of the Mortgage and commenced this action.  Pl. Facts ¶¶ 19-20.  The entire amount of the loan is now due and payable.  Pl. Facts ¶¶ 15, 19.

This action to foreclose on the Property was commenced with the filing of RL's complaint on December 28, 2018.  Pl. Facts ¶ 20; *see also* Complaint, ECF No. 1.  In the operative complaint, RL names as Defendants all those it believed feasibly could claim any interest in the Property.  They are:

-   Simone Ender, both individually and as Executrix of the Estate of Paul Anthony Ender (Amended Complaint, ECF No. 148, ¶ 5);
-   Monique Ender Silberman, daughter of Paul Anthony Ender (Amended Complaint ¶ 6);
-   Brigette Laing, daughter of Paul Anthony Ender (Amended Complaint ¶ 7);

- Danuta Maryiak, Guardian for minor Emelye Ender, who is a daughter of Paul Anthony Ender (Amended Complaint ¶ 8);

- Jack and Joan Mann, the tenants residing at the Property at the time this action was commenced (Amended Complaint ¶ 9);

- the Board of Managers of the Park 900 Condominium (the "Board of Managers"), which is the acting association that manages the condominium where the Mortgaged Property is located, and which has a lien on the Mortgaged Property for common charges unpaid by Ender (Amended Complaint ¶ 10);

- the New York City Department of Finance (the "NYCDF"), the taxation agency for the State of New York , which has or may have a lien on the Property related to unpaid taxes (Amended Complaint ¶ 11); and

- the Unknown Tenants who, unknown to RL, may reside at the Property or hold other leasehold, tenancy, possessory, or other interests.

During the pendency of this litigation, certain Defendants settled the claims asserted by RL or otherwise stipulated to the entry of judgment against them. These Defendants include Danuta Maryniak, as guardian for Emelye Ender [ECF No. 78], Jack and Joan Mann [ECF Nos. 63, 95], and the Board of Managers [ECF No. 176]. All other Defendants were served and then defaulted. Plaintiff obtained certificates of default against them. *See* ECF Nos. 42 [Ender], 47 [Silberman], 71 [Laing], 163 [NYCDF].

Ender and Silberman moved to vacate their defaults. *See* Motion to Vacate Default, ECF No. 79. In an Order dated January 3, 2020, Judge Analisa Torres denied the request to vacate the defaults, noting that the defaults by Ender and Silberman were "plainly willful." *See RL 900 Park LLC v. Ender*, No. 18-cv-12121, 2020 WL 70920, at *3 (S.D.N.Y. Jan. 3, 2020). The case was transferred to me shortly thereafter.

While the litigation was ongoing, and without first informing RL, Ender transferred title to the Property to CPP on March 3, 2020.[1] Pl. Facts ¶ 31. The transfer was recorded by the New

---

[1] Ender originally owned the Property in joint tenancy with her late husband Paul Anthony Ender. *See* Amended Complaint, ECF No. 148, ¶ 5. Ender has been appointed Executrix of Paul Anthony Ender's estate. *Id.* The Parties' motion papers do not specify who currently owns what percentage of the Property other than to say that CPP acquired an interest (and potentially all of the Property) in 2020. Lacking that information and for simplicity, in this

York County clerk. Pl. Facts ¶ 31. CPP acquired the Property with notice of the Mortgage, but without notice of this foreclosure action. *See* Pl. Facts ¶¶ 32, 35, 38-40; Def. Facts ¶¶ 1-2; Def. Counter ¶¶ 32a, 35a, 38a-40a. Four months after the transfer and more than a year and a half after filing this case, on July 2, 2020, RL filed an "Amended Notice of Pendency" of the foreclosure action with the New York County clerk, which was recorded against the Property. Pl. Facts ¶ 35; *see also* Def. Facts ¶ 6. No notice of pendency of this action had previously been filed or recorded against the Property. *See* Def. Facts ¶¶ 1-2, 6. The "Amended Notice" purported to amend a "Notice of Pendency" [ECF No. 9], which had been filed on the ECF docket in this case at commencement, but which was never filed with the New York County clerk and was not indexed against any property. As noted below, this document is not an effective notice of pendency because it was never indexed against the Property. *See infra* at 25.

CPP moved to intervene in this case after RL sought a default final judgment of foreclosure. *See* Motion to Intervene and to Dismiss, ECF No 190; Pl. Facts ¶ 30. The Court granted CPP's motion to intervene and denied the motion for a default judgment without prejudice to renewal. *See* Order Denying Without Prejudice Motion for Default Judgment, ECF No. 197; Order Granting Motion to Intervene, ECF No. 195. In particular, the Court denied the default judgment motion because it was unclear what title, if any, the original Defendants retained in the Property following the transfer to CPP. *See* Order Denying Without Prejudice Motion for Default Judgment, ECF No. 197; Transcript of July 29, 2020, Conference, ECF No. 199, at 14:18-21.

---

Opinion the Court refers to CPP as the current owner of the Property, since the percentage owned by CPP is not relevant to the Court's analysis or the outcome here.

After the motion for a default judgment was denied, RL and CPP engaged in discovery, including depositions of at least two members of CPP. *See* Pl. Facts ¶¶ 37, 44. At the close of discovery, RL and CPP each moved for summary judgment.[2]

## LEGAL STANDARD

### A.   *Motion for Summary Judgment*

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court can conclude that there is no genuine dispute as to any material fact in three circumstances. *See Johnson v. Nat'l Football League Players Ass'n*, No. 17-cv-5131 (RJS), 2019 WL 3531957, at *2 (S.D.N.Y. Aug. 2, 2019). First, the parties agree on all facts (that is, there are no disputed facts). Second, the parties disagree on some or all facts, but no reasonable fact-finder could accept the non-moving party's version of the facts (that is, there are no genuinely disputed facts). *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Third, the parties disagree on some or all facts, but even on the non-moving party's version of the facts, the

---

[2] The Court has reviewed the following in connection with the cross-motions for summary judgment:
- RL's first motion filing: (1) the Notice of RL's Motion for Summary Judgment, ECF No. 231 ("RL Notice of Motion"); (2) the Declaration of Bryan Morjain in Support of RL's Motion, ECF No. 232 ("Morjain Decl."); (3) the Declaration of Roger Slade, Esq. in Support of RL's Motion, ECF No. 233 ("Slade Decl."); (4) the Memorandum of Law in Support of RL's Motion, ECF No. 234 ("Pl. Br."); and (5) RL's Local Rule 56.1 Statement in Support of its Motion, ECF No. 235 ("Pl. Facts");
- CPP's first motion filing: (1) the Notice of CPP's Motion for Summary Judgment, ECF No. 238 ("CPP Notice of Motion"); (2) the Declaration of Arthur Spitzer in Support of CPP's Motion and in Opposition to RL's Motion, ECF No. 239 ("Spitzer Decl."); (3) the Memorandum of Law in Support of CPP's Motion and in Opposition to RL's Motion, ECF No. 240 ("Def. Br."); (4) CPP's Local Rule 56.1 Counterstatement of Material Facts in Response to RL's Statement, ECF No. 241 ("Def. Counter"); and (5) CPP's Local Rule 56.1 Statement of Material Facts in Support of CPP's Motion, ECF No. 242 ("Def. Facts");
- RL's second motion filing: (1) the Supplemental Declaration of Bryan Morjain in Support of RL's Motion and in Opposition to CPP's Motion, ECF No. 243 ("Morjain Supp. Decl."); and (2) the Reply Memorandum of Law in Support of RL's Motion and in Opposition to CPP's Motion, ECF No. 244 ("Pl. Reply");
- CPP's second motion filing: (1) the Reply Memorandum of Law in Support of CPP's Motion.
- RL's reponse to the Court's *sua sponte* Order to Show Cause regarding subject matter jurisdiction, ECF No. 250 ("RL Juris. Ltr.").

moving party is nonetheless entitled to judgment as a matter of law (that is, none of the factual disputes are material). *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a fact is genuinely disputed, a court may not weigh evidence or make credibility assessments. *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996). It must draw all reasonable inferences in favor of the party opposing summary judgment. *Id.* However, the non-moving party must provide "hard evidence," *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998), "from which a reasonable inference in [its] favor may be drawn," *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (quoting *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 59 (2d Cir. 1997)). "Conclusory allegations, conjecture, and speculation" do not support reasonable inferences. *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998). Moreover, a mere "scintilla of evidence in support of the [non-moving party's] position" is not enough to create a genuine dispute. *Anderson*, 477 U.S. at 252.

**B.    *Motion for Sanctions***

Under Rule 11 of the Federal Rules of Civil Procedure, a Court may sanction an attorney, law firm, or party that either: 1) presents arguments for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the costs of litigation, 2) makes frivolous arguments, 3) makes factual contentions without evidentiary support, or 4) denies factual contentions without evidence. Fed. R. Civ. P. 11(b). In other words, "sanctions shall be imposed when it appears that a competent attorney could not form the requisite reasonable belief as to the validity of what is asserted in the papers." *Oliveri v. Thompson*, 803 F.2d 1265, 1275 (2d Cir. 1990). When considering the imposition of sanctions, the Court must examine the objective merits of each individual claim and not the pleading as a whole. *See Cross & Cross Props., Ltd. v. Everett Allied Co.*, 886 F.2d 497, 505 (2d Cir. 1989). However, the Court is cautioned by the admonition of the Second Circuit that "'[b]y definition, every unsuccessful

complaint, at some level of analysis, contains either a flawed argument or an unsupported allegation," and that an argument or minor sub-claim, though frivolous, may well not warrant sanctions if made as part of 'an otherwise well-and-independently grounded claim.'" *Id.* at 504 (quoting *Burull v. First Nat'l Bank*, 831 F.2d 788, 789 (8th Cir. 1987), and then quoting *Calloway v. Marvel Ent. Grp.*, 854 F.2d 1452, 1473 n. 9 (2d Cir. 1988), *rev'd on other grounds sub nom. Pavelic & Leflore v. Marvel Ent. Grp.*, 489 U.S. 1009 (1989)) (alteration in original).

The Court also has authority to sanction a party, attorney, or firm based on the Court's "inherent powers to impose sanctions for bad-faith conduct." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991). However, such inherent powers "must be exercised with restraint and discretion." *Id.* (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1991)). The Court also must ensure that the sanctions "comply with the mandates of due process." *Id.* at 50.

## DISCUSSION

Both Parties seek to resolve this litigation by their motions. RL seeks an order awarding it final judgment of foreclosure against all Defendants, including CPP. *See* RL Notice of Motion at 1. Such an order would then allow it to begin the process to initiate a foreclosure sale to recover the amounts outstanding on the mortgage. *See* Letter to Court dated April 9, 2020, ECF No. 178, at 1-2. CPP, in turn, argues that several procedural and substantive bars exist to judgment in this case, and asks that the case be dismissed. *See* CPP Notice of Motion at 1.

The Parties' motion papers are structured around CPP's affirmative defenses asserted in its Answer to the Amended Complaint. [3] *See* RL Memorandum of Law in Support of Motion for

---

[3] CPP's affirmative defenses, as set out in its Answer to the Amended Complaint [ECF No. 201] are: 1) RL lacks standing; 2) RL is an improper party to the action because it lacks authority to enforce the Mortgage and note; 3) *res judicata*, collateral estoppel, waiver, release, laches, ratification, unclean hands, and accord and satisfaction; 4) documentary evidence; 5) RL lacks "proper corporative possessory rights to the mortgage and note;" 6) CPP did not have notice of the action before taking possession of the Property; 7) RL failed to comply with provisions of New York law regarding residential mortgage foreclosures; 8) RL is not a holder in due course of the mortgage note; 9) RL lacks possession of the mortgage note; 10) RL was not effectively transferred right to foreclose on the mortgage

Summary Judgment, ECF No. 234 ("Pl. Br."), at 13-24; CPP Memorandum of Law in Support of

Cross-Motion for Summary Judgment, ECF No. 240 ("Def. Br."), at 4-17.  CPP, apparently,

abandoned several of those defenses—its seventh, fourteenth, fifteenth and sixteenth affirmative

defenses—by failing to contest RL's motion on those grounds.  *See* RL Reply Memorandum in

Support of Summary Judgment and Opposition to CPP Cross-Motion, ECF No. 244 ("Pl.

Resp."), at 9.  The Court deems those defenses abandoned and does not consider them here.  *See*

*Capak v. Epps*, No. 18-cv-4325, 2020 WL 3073210, at *10 (S.D.N.Y. June 10, 2020) ("'Federal

courts may deem a claim abandoned when a party moves for summary judgment on one ground

and the party opposing summary judgment fails to address the argument in any way.'" (quoting

*Xu v. City of New York*, No. 18-cv-1222 (RA), 2020 WL 2088301, at *4) (S.D.N.Y. Apr. 30,

2020))); *see also Maher v. Alliance Mortg. Banking Corp.*, 650 F. Supp. 2d 249, 267-68

(E.D.N.Y. 2009) (collecting cases).

     As briefed by the Parties, the remaining dispute largely revolves around four discrete

issues.  *First*, CPP claims that the Court lacks subject matter jurisdiction over this case.  *See* Def.

Br. at 4-6.  *Second*, RL submits that any defenses to foreclosure based on the Mortgage contract

cannot be raised by CPP since it is not a signatory to the contract.  *See* Pl. Br. at 17-19.  *Third*,

and relatedly, CPP claims that RL lacks standing to bring this action because it has not

demonstrated that it properly holds the promissory note underlying the Mortgage.  *See* Def. Br. at

6-10.  *Fourth*, RL asserts that the filing of the "Amended Notice of Pendency" in July 2020 cures

any issues related to notice or lack of a filed notice of pendency.  *See* Pl. Br. at 13-17.

---

note; 11) RL has overstated and exaggerated the amount owed on the Mortgage by including predatory fees; 12) RL
would be unjustly enriched because it sold the note and Mortgage into an asset pool or because it has already been
compensated by an insurer; 13) the Court lacks subject matter jurisdiction over this case; 14) RL is not entitled to
interest or legal fees due to defects and delays in this case; 15) RL has overstated the monthly mortgage and finance
charges; and (16) further defenses that may be developed in discovery.

Conversely, CPP argues that RL's failure to file a notice of pendency or to otherwise give it notice of this proceeding, mandates dismissal of the case.

**A.**   ***RL Has Failed to Establish that the Court Has Subject Matter Jurisdiction Over This Case***

CPP submits that the case should be dismissed because the Court lacks subject matter jurisdiction over this case.  Specifically, CPP argues that RL has not pleaded the citizenship of all of its members.  *See* Def. Br. at 4-6.  CPP is correct that the citizenship of the parties is not properly alleged in the Amended Complaint [ECF No. 148].  RL initially responded to CPP's motion by listing the member entities of RL, *see* Pl. Resp. at 4-5, but failed to detail those members' citizenship, and the members and citizenship of RL's members who are themselves LLCs.  Moreover, certain of RL's members are common law trusts whose citizenship also was not addressed by RL.  Upon initial review of the parties' briefing, the Court *sua sponte* ordered RL to show cause why the case should not be dismissed for failure to allege subject matter jurisdiction as set out in CPP's motion papers.  *See* Order to Show Cause, ECF No. 249.  RL responded with a letter listing the membership of some, but not all, RL-member LLCs and the citizenship of each common law trust.  *See* Letter to Court dated January 21, 2021, ECF No. 250 ("RL Juris. Ltr.").

RL bears the burden of establishing subject matter jurisdiction in this case by a preponderance of the evidence.  *Raymond Loubier Irrevocable Tr. v. Loubier*, 858 F.3d 719, 725 (2d Cir. 2017) ("[P]laintiffs bear the burden of making a preponderance showing, *inter alia*, of 'complete diversity.'" (internal quotation omitted)).  Subject matter jurisdiction cannot be waived, and the Court has an independent obligation to assure itself that jurisdiction exists in every case.  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (first citing *United States v. Cotton*, 535 U.S. 625, 630 (2002), and then citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S.

574, 583 (1999)).  When determining whether it has subject matter jurisdiction, the Court "[is] permitted to look to materials outside the pleadings." *Romano v. Kazacos*, 609 F.3d 512, 520 (2d Cir. 2010) (first citing Fed. R. Civ. P 12(b)(1), and then citing *Land v. Dollar*, 330 U.S. 731, 735 n. 4 (1947)).

RL asserts that the Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332.  Diversity jurisdiction requires complete diversity of all Parties and an amount in controversy exceeding $75,000.  *See* 28 U.S.C. § 1332(a).  The amount in controversy in this case is at least $1,500,000, the full outstanding principal value of the Mortgage.  *See* Pl Facts ¶ 15.

For the purposes of diversity jurisdiction, an LLC is a citizen of all the states in which its members are citizens.  *See Avant Capital Partners, LLC v. W108 Dev. LLC*, 387 F. Supp. 3d 320, 322 (S.D.N.Y. 2016) (citing *Bayerische Landesbank, New York Branch v. Aladdin Capital Mgmt., LLC*, 692 F.3d 42, 49 (2d Cir. 2012)).  "Furthermore, if [any] of the LLC-parties have members which are LLC's, the citizenship of the members of those LLC's must also be given, and must be diverse . . . ." *Id.*  In the case of trusts, the trust's citizenship is determined by the citizenship of the Trustee, unless the trust is not a common law trust, in which case the Trust takes on the citizenship of all of its beneficiaries.  *Loubier*, 858 F.3d at 731.

RL has seventeen members.  *See* RL Juris. Ltr. Exs. A-D.  Of the members, twelve are individuals or corporate entities with citizenship solely in the state of Florida.  *See* RL Juris. Ltr. Exs. A-B.  Among the five remaining members, two are trusts.  *See* RL Juris. Ltr. Ex. D.  RL asserts that these entities are common law trusts under the Florida Trust Code, and thus their citizenship is that of the Trustees, both of whom are Florida citizens.  *See* RL Juris. Ltr. at 1, Ex. D.  RL also includes the beneficiaries of these Trusts, all of whom also are Florida citizens.  *See* RL Juris. Ltr. Ex. D.  Thus, the Trusts also are citizens of Florida.

11

The three remaining members of RL are LLCs.  RL establishes that two of its member LLCs—Mandich Group Investments, LLC and Ori Tamuz, LLC—are Florida citizens because they only have individual members who are citizens of Florida.  *See* RL Juris. Ltr. Ex. C.  However, RL did not state the membership of R&L Ocean Towers, LLC, which it apparently misclassified as a "corporation" in its letter.[4]  *See* RL Juris. Ltr. Ex. B.  In its letter, RL names a "shareholder" of this entity, but not members, and does not state the citizenship of that person.  *See* RL Juris. Ltr. Ex. B.  Without that information, the Court cannot conclude that RL is a citizen of Florida and RL has failed to meet its burden to establish subject matter jurisdiction.

There are also issues with RL's pleading of the citizenship of Defendants.  RL adequately pleads that the individual Defendants are citizens of New York and that CPP is a citizen of New Jersey based on its single member.  *See* First Amended Complaint, ECF No. 148, ¶¶ 5-9; RL Juris. Ltr. at 2; Deposition Transcript of Arthur Spitzer, ECF No. 236, at 10:3-4.  RL, however, does not adequately allege the citizenship of the Board of Managers or NYCDF.  The Amended Complaint simply states that the Board of Managers and the NYCDF are also citizens of New York based on their principal places of business.  *See* Amended Complaint ¶¶ 10-11.  These allegations are not sufficient to establish diversity jurisdiction without further information as to these entities' forms and members.

The Board of Managers is deemed a citizen of all the states in which individual unit owners are citizens.  *See Francesco v. Beacon Court Condominium*, No. 07-cv-02766 (LMM),

---

[4] While it appears obvious based on the entity's name, the Court has confirmed that R&L Ocean Towers, LLC is in fact a Florida Limited Liability Company through a search of the Florida Secretary of State, Division of Corporations website.  The Court may take judicial notice of business entity searches like this one because they are public filings made with a governmental agency.  *See Sigmon v. Goldman Sachs Mort. Co.*, No. 12-cv-3367 (ALC), 2016 WL 3982509, at *5 (S.D.N.Y. July 22, 2016); *see also Mesa v. Am. General Life Ins. Co.*, No. 19-cv-01393-DAD-EPG, 2020 WL 374354, at *3 (E.D. Cal. Jan. 23, 2020) (taking judicial notice of a "public filing with the California Secretary of State"); *Cards Against Humanity, LLC v. Loftek Tech. Co., LLC*, 2014 WL 120976, at *2 n. 3 (N.D. Cal. Jan. 13, 2014) (*sua sponte* taking judicial notice of business entity search results on the California Secretary of State website).

2009 WL 174184, at *2 (S.D.N.Y. Jan. 6, 2009) (citing *Caldwell v. Sara*, No. 02-cv-05345, 2003 WL 182937, at *2 (S.D.N.Y. Jan. 28, 2003)) (concluding that a condominium board is a citizen of the states of citizenship of all unit owners unless the board has incorporated).  Here, RL has not attempted to make a showing that the Board of Managers is incorporated, and has failed to allege the citizenship of any unit owners in the relevant condominium.

As for the NYCDF, it has long been true that "a State is not a 'citizen' for the purposes of [] diversity jurisdiction."  *Moor v. Alameda*, 411 U.S. 693, 717 (1973).  The presence of an "arm of the state" in the case would destroy diversity jurisdiction.  *See, e.g.*, *World Trade Center Props., L.L.C. v. Hartford Fire Ins. Co.*, 345 F.3d 154, 161 (2d Cir. 2003) ("Defendant Port Authority presents a closer question on jurisdiction because it is a state-created body, thereby raising the possibility that it is a not a "citizen" of any state, the effect of which would be to destroy diversity."), *abrogated on other grounds in Wachovia Bank v. Schmidt*, 546 U.S. 303 (2006).  Whether the NYCDF is an "arm of the state," however, is a fact-intensive question turning on the factors laid out in *Moor*.  *See* 411 U.S. at 719; *see also* 13E Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3602 (describing citizenship of state entities and noting that "[t]he question of which entities constitute the state and which do not for diversity jurisdiction purposes, often presents a difficult question of line drawing, with seemingly similar institutions in different states being treated variously.").

The Court is not aware of binding precedent discussing the NYCDF or determining its citizenship.  However, Courts in this Circuit regularly hold that they have diversity jurisdiction even when the NYCDF is a party.  *See CIT Bank, Nat'l Ass'n v. Zisman*, No. 17-cv-02126 (BA) (RER), 2020 WL 8081939, at *7 n. 5 (E.D.N.Y. Apr. 8, 2020) (with NYCDF included as a defendant, "the Court concludes, on the record before it, that it has subject matter jurisdiction based on complete diversity of the parties"); *CIT Bank, Nat'l Ass'n v. Ekpo*, No. 17-cv-00787

(DLI) (RML), 2019 WL 4861144, at *1 (E.D.N.Y. Sept. 30, 2019) (same); *Harsco Corp. v. New York City Dep't of Gen. Servs.*, No. 92-cv-02314 (RLC), 1993 WL 138829, at *1 (S.D.N.Y. Apr. 23, 1993) (same).  Once again, RL has made no attempt to show that NYCDF is a citizen of New York beyond the conclusory pleading in the Amended Complaint.  *See* Amended Complaint ¶ 11.

RL bears the burden of establishing subject matter jurisdiction in this case by a preponderance of the evidence.  *Loubier*, 858 F.3d 719, 725.  Here, notwithstanding the Court having invited further details from RL in order to satisfy its burden, *see* Order to Show Cause, ECF No. 249, RL still has failed to detail the citizenship of all of its members and otherwise has made no attempt to show that the Board of Managers and NYCDF are, in fact, citizens of New York.  As a result of this failure, the Court lacks subject matter jurisdiction over this case and CPP's motion is granted on that ground.  However, assuming RL could make an appropriate showing with regard to all of these Parties, the Court considers the Parties other arguments as well.

**B.**     ***The Court Will Not Disallow CPP From Raising Contract Defenses At This Time***

RL asserts that CPP, because it was not a signatory to the Mortgage, cannot assert defenses based on the contract.  *See* Pl. Br. at 17-19.  Based on this argument, RL challenges CPP's first, second, fifth, eighth, ninth, tenth, and eleventh affirmative defenses.  *See* Pl. Br. at 17.  Included among those, RL submits that CPP—a non-signatory of the mortgage agreement and the promissory note—is barred from questioning the assignment of the Mortgage and note to RL by Rok Lending.  *See* Pl. Br. at 17.

In general, the Court agrees with CPP that under longstanding New York law, the assignee of a contract inherits all of the claims and defenses belonging to the previous owner.  *See, e.g.* Def. Br. at 11-13.  As a general rule, an assignee of real property "is subject to all the

equities and burdens which attach to the property assigned." *Int'l Ribbon Mills, Ltd. v. Arjan Ribbons, Inc.*, 325 N.E.2d 137, 139, 36 N.Y.2d 121, 126 (1975).  "[A]n assignee of a . . . mortgage takes subject to any defense that would have prevailed against his assignor." *Hammelburger v. Foursome Inn Corp.*, 431 N.E.2d, 282, 54 N.Y.2d 580, 586 (1981) (citations omitted).  However, RL is also correct that a non-party to a contract may not assert claims or defenses under a contract unless that party is a third-party beneficiary.  *See, e.g.*, *Bayerische Landesbank, New York Branch v. Aladdin Capital Mgmt., LLC*, 692 F.3d 42, 49 (2d Cir. 2012).

 Both arguments miss the mark.  New York law draws a distinction between purchasing property "subject to" a mortgage and "assuming" a mortgage.  *See, e.g.*, *Rogers v. Niforatos*, 57 A.D.2d 984, 985, 394 N.Y.S.2d 473, 475 (N.Y. App. Div. 3d Dep't 1977) (considering whether language indicates that a purchaser "assumed" a mortgage or simply purchased "subject to" the mortgage).  If the purchaser assumes the mortgage and thereby incurs personal liability, then the purchaser can be said to possess the "equities and burdens" accompanying it and may assert claims under the contract.  *Int'l Ribbon Mills, Ltd.*, 325 N.E.2d at 139.  By contrast, if a party takes property "subject to" the mortgage, he or she has incurred no personal liability and is otherwise a stranger to the contract.  In essence, purchasing property "subject to" a mortgage incurs no personal liability on the purchaser and leaves the original mortgagor with sole responsibility to repay the mortgage.  *Rogers*, 57 A.D.2d at 985.  As such, the purchaser cannot assert contract claims or defenses regarding payment of the mortgage.

 In this case, the Parties have not clearly stated whether CPP took title to the Property subject to the Mortgage or whether CPP assumed the Mortgage.  RL has stated, and CPP does not dispute, that "Ender transferred the Mortgaged Property to Central Park."  *See* Pl. Facts ¶ 31. Both Parties also have stated that CPP took title to the Property "subject to the . . . Mortgage at issue in this foreclosure action."  *See* Pl. Facts ¶ 32; Def Counter ¶ 32a; *see also* Def. Facts ¶ 7

(incorporating a title search received by CPP prior to its purchase which includes the Mortgage). However, RL has also stated that "Central Park has failed to make any payments towards the indebtedness." Pl. Facts ¶ 34. And CPP refers to itself as the "assignee of its predecessor in interest" in relation to the Mortgage. *See* Def. Br. at 12. No documentary evidence is offered by either Party regarding the terms of the transfer of the Property from Ender to CPP.

The Court is left with seemingly contradictory factual assertions by the Parties. While both RL and CPP have stated that CPP purchased Ender's property "subject to" the Mortgage, RL has indicated (and CPP does not otherwise dispute) that it expects CPP to make payments on the Mortgage. As a result, the Court cannot determine at this stage what rights and obligations CPP incurred when it purchased the Property. Consistent with the command that summary judgment is inappropriate where there are disputed factual issues, *see* Fed. R. Civ. P. 56(a), the Court must deny RL's motion to the extent it seeks a ruling that CPP cannot assert contract-based defenses to this action.

## C.     *RL Adequately Has Alleged Ownership of the Mortgage and Note*

CPP also seeks summary judgment on the ground that RL has not adequately alleged that it properly was assigned the Mortgage and underlying note that Ender signed. *See* Def. Br. at 6-11. The New York courts classify this as a "standing" issue, though the Parties here also argue that it is a contract defense subject to the Court's analysis above. *Compare Aurora Loan Servs., LLC v. Taylor*, 25 N.Y.3d 355, 361, 34 N.E.3d 363, 366 (2015) ("[T]he note, and not the mortgage, is the dispositive instrument that conveys *standing* to foreclose under New York law" (emphasis added)), *with* Pl. Br. at 17 (stating that CPP's defenses based on lack of standing [Affirmative Defenses 5, 8, & 9] are "defenses to this action based upon a contract."). Since the Court has determined that RL is not entitled to summary judgment precluding CPP from

asserting contract defenses, the Court need not decide at this stage whether CPP is pressing a standing argument or a contract defense.

To avoid summary judgment in a foreclosure case, a plaintiff must establish that it "had physical possession of the original [promissory] note prior to commencement of this foreclosure action." *Aurora Loan Servs.*, 25 N.Y.3d at 360; *see also Gustavia Home, LLC v. Rutty*, 785 F. App'x 11, 14-15 (2d Cir. 2019) (same). CPP argues that RL has not established that it held the promissory note underlying the Mortgage on or before the date this action was commenced, and that the note properly was transferred to RL. *See* Def. Br. at 6-11. In response, RL offers two affidavits from its Manager regarding the transfer of the promissory note and the Mortgage. *See* Morjain Decl., ECF No. 232; Morjain Supp. Decl., ECF No. 243.

Here, RL has established that it has standing sufficient to avoid summary judgment. The law is clear that physical possession of a promissory note may be proven by affidavit. *Aurora Loan Services*, 25 N.Y.3d at 361. In his first declaration, RL's Manager, Bryan Morjain, stated that "[o]n or about November 27, 2018, Rok Lending, LLC. assigned the Mortgage to Plaintiff." Morjain Decl. ¶ 9. He continued: "At the time that the Mortgage was assigned by Rok Lending LLC to Plaintiff, the original Note was tendered by Rok Lending, LLC to Plaintiff. Plaintiff is presently in the possession of the original Note." Morjain Decl. ¶ 12. Mr. Morjain based these assertions on his personal knowledge of the events. Morjain Decl. ¶ 2. These statements were incorporated into RL's Local Rule 56.1 Statement. *See* Pl. Facts ¶ 12.

In response to CPP's arguments that its statements were insufficient, Mr. Morjain submitted a supplemental declaration curing the alleged failure to cite documents and other issues. In his supplemental declaration, Mr. Morjain states:

> RL 900 Park was in possession of the original Note at the time that this lawsuit was commenced. RL 900 Park still has possession of the original note. The Note which is at issue in this lawsuit was tendered, transferred and delivered by Rok

Lending, LLC to RL 900 Park, LLC prior to the commencement of this lawsuit. In fact, the Assignment which was filed as an exhibit to the Verified Complaint in this action specifically states as follows: "The Assignor [Rok Lending, LLC] does hereby grant, bargain, sell, assign, transfer, and set over unto Assignee [RL 900 Park] all of Assignor's rights, title and interest in and to **all documents evidencing and securing the Loan and the payments due under such documents and all rights, remedies, and incidents thereunder belonging."**

Morjain Supp. Decl. ¶¶ 7-9 (emphasis and alterations in original). Mr. Morjain cites to the

Assignment, an exhibit filed previously in this case and attached to the Complaint as Exhibit E.

*See* Complaint, ECF No. 12, Ex. E (the "Assignment").[5]

An assignment like this one, transferring all documents evidencing a loan, may be

enough to prove that the promissory note was transferred. *See, e.g.*, *FTBK Investor II LLC v.*

*Genesis Holding LLC*, 48 Misc. 3d 274, 282, 7 N.Y.S.3d 825, 833 (N.Y. Sup. Ct. N.Y. Cty.

2014). Indeed, "all documents evidencing and securing the Loan" in this case must include the

promissory note, since it is the only document evidencing the loan itself (as distinct from the

Mortgage). Mr. Morjain then testifies that the transfer of the note was effective, based on his

personal knowledge as Manager of RL and as the Manager of Rok Lending, LLC. Morjain Decl.

¶ 1-2, 12. Indeed, Mr. Morjain is a signatory to the Assignment. *See* Assignment at 2. This is

sufficient to carry RL's burden of showing that RL is in possession of the promissory note

underlying the Mortgage for the purposes of summary judgment.

CPP's objection that the copy of the promissory note attached to the complaint is not

endorsed is accurate, but not fatal. In some cases, lack of an endorsement, or an endorsement in

blank, on a promissory note can be evidence a plaintiff's lack of standing, especially where there

is no other admissible evidence of a proper assignment. *See Deutsche Bank Nat'l Trust Co. v.*

---

[5] The Supplemental Morjain Declaration refers to this document as "Exhibit C" but quotes from it at length. It is obvious to the Court that this reference is a scrivener's error, and that Mr. Morjain intended to cite Exhibit E. The Court will consider the intended document.

*Elshiekh*, 179 A.D.3d 1017, 1021, 118 N.Y.S.3d 83, 187-88 (N.Y. App. Div. 2d Dep't 2020) (holding a plaintiff lacked standing where affidavits based their statements on "unspecified business records" and the records were not introduced); *Weiss*, 133 A.D.3d at 705-06 (holding that a plaintiff failed to establish standing where affidavits of a secretary contained only "conclusory statements" and the promissory note contained an endorsement in blank).

This is not the case here, as Mr. Morjain has both testified to the assignment based on his personal knowledge and referenced a specific document which purports to assign the promissory note. The New York Court of Appeals has held that an affidavit based on review of the original promissory note was sufficient to establish standing. *See Aurora Loan Servs.*, 34 N.E.3d at 366-67. The Court of Appeals also noted in *Aurora* that there was no indication the defendant there requested the original promissory note in discovery or otherwise moved to compel its production. *Id.* at 366. That appears to be true here as well, since CPP has not indicated that it requested a copy of the original note. In short, the Court here, as the court in *Aurora* concluded, finds that Mr. Morjain's declarations are sufficient at the summary judgment stage to establish RL's ownership and possession of the Mortgage and note. RL's motion for judgment dismissing CPP's affirmative defense is granted and CPP's cross-motion for summary judgment on this ground is denied.

**D.     *CPP Had No Notice of This Action Before Purchasing the Property***

Finally, CPP seeks judgment on the merits, asserting that it did not have notice of this action (actual or constructive) prior to its purchase of the Property in question and, as a result, judgment of foreclosure cannot be had against it and RL's case should be dismissed. *See* Def. Br. at 13-17. RL asserts that its filing of an "Amended Notice of Pendency" in July 2020— several years after Ender's alleged default and four months after Ender transferred the Property to CPP—satisfies the relevant provisions of New York law such that judgment may be entered in

its favor.  *See* Pl. Br. at 13-17.  However, RL's failure timely to file and index a notice of

pendency in compliance with New York law precludes entry of judgment in this action.

  A notice of pendency, or *lis pendens*, is a document that a claimant can file to put the

world on notice of a claim against a piece of property.  *See* 2 Bruce J. Bergman, Bergman on

New York Mortgage Foreclosures ("Bergman") § 15.02 (2020); *see also* David D. Siegel &

Patrick M. Connors , New York Practice § 334.  New York law permits that a notice of pendency

may be filed in connection with any case that might "affect the title to, or the possession use or

enjoyment of, real property."  N.Y. C.P.L.R. § 6501.  However, a notice of pendency is required

to be filed in all mortgage foreclosure cases.  *See* N.Y. R.P.A.P.L § 1331.[6]  In essence, a notice

of pendency allows a claimant to register its claim against a property so that any judgement that

results from the claim is senior to later encumbrances and so that potential purchasers have

constructive notice of a potential defect in the title of the property (*i.e.* a purchaser who takes

title while a notice of pendency is present is aware that its interest in the property could be wiped

out at any moment).  *See* Bergman § 15.02.

  New York Civil Practice Laws and Rules section 6501 provides that:

> [a] notice of pendency may be filed in any action in a court of the state or of the
> United States in which the judgment demanded would affect the title to, or the
> possession, use or enjoyment of, real property, except in a summary proceeding
> brought to recover the possession of real property.   The pendency of such an
> action is constructive notice, from the time of filing of the notice only, to a
> purchaser from, or incumbrancer against, any defendant named in a notice of
> pendency indexed in a block index against a block in which property affected is
> situated or any defendant against whose name a notice of pendency is indexed.   A
> person whose conveyance or incumbrance is recorded after the filing of the notice
> is bound by all proceedings taken in the action after such filing to the same extent
> as a party.

---

[6] In New York, notices of pendency are governed by the Civil Practice Laws and Rules (C.P.L.R.), but actions to
foreclose on a mortgage are governed by the Real Property Actions and Proceedings Law (R.P.A.P.L.).  The Real
Property Actions and Proceedings Law incorporates the requirements relating to notices of pendency through
Section 1331.

N.Y. C.P.L.R. § 6501.  In other words, the statute provides that in a foreclosure action in federal

or state court, the Plaintiff may file and index a notice of pendency against the property at issue

to establish notice of the proceeding.  It further provides that a notice of pendency is

"constructive notice" of the claim "to a purchaser from . . . any defendant named in a notice of

pendency indexed in a block index."  *Id.*  The notice of pendency only provides notice of the

pending court claims to a later purchaser when the notice has been "indexed" (*i.e.* recorded) by

the county clerk against the property.  *See Del Pozo v. Impressive Homes Inc.*, 95 A.D.3d 1263,

1265, 944 N.Y.S.2d 768, 769 (N.Y. App. Div. 2d Dep't 2012) ("An error in indexing a notice of

pendency prevents a record of that instrument from constituting constructive notice from the

time that the notice of pendency is filed through the period that the indexing error remains

uncorrected.").  This rule ensures that a title search done on the property will return the notice of

pendency, alerting a prospective purchaser that title to the property is in question.

     Even if a notice of pendency is filed, unless and until it is indexed against a property, it is

ineffective against subsequent purchaser, and a later-filed notice of pendency does not cure a

non-indexed or otherwise ineffective earlier-filed notice.  *See Del Pozo*, 95 A.D.3d at 1265; *cf.*

*Baccari v. De Santi*, 70 A.D.2d 198, 201-02, 431 N.Y.S.2d 829, 832 (N.Y. App. Div. 2d Dep't

1979) (holding that a notice of pendency that was filed with the Clerk but was improperly

indexed due to a Clerk error was nonetheless void for constructive notice purposes).  The

effective date is the date of any second, properly indexed notice of pendency.  *See Del Pozo*, 95

A.D.3d at 1265.

     "Although the filing of a lis pendens binds subsequent encumbrancers of the real property

. . . it has no effect on anyone holding a superior position."  Bergman § 15.02 (citing *Marine*

*Midland Bank v. Highgate Hall of Orange Cty., Inc.*, 92 Misc. 2d 865, 401 N.Y.S.2d 381

(1977)).  "An interest acquired in the property prior to the filing of the lis pendens . . . will

constitute a superior position, provided however, that the prior interest had been recorded before

the lis pendens." *Id.* A party who acquires a right in the property cannot be bound by a

foreclosure for which the notice of pendency was filed after the purchaser took its interest. *Cf.*

*id.* (citing *Wells Fargo Bank, Nat'l Ass'n v. Gonsalves*, 44 Misc. 3d 531, 987 N.Y.S.2d 561

(N.Y. Sup. Ct. Westchester Cty. 2014). Where a plaintiff fails to file a notice of pendency, the

plaintiff's "rights would be defeated by the defendant's alienation of the subject property before

the judgment was rendered. Such a result [forces] a plaintiff to commence his proceeding *de*

*novo* against the alienee, subject again to being defeated by a similar course of proceedings."

*Goldstein v. Gold*, 106 A.D.2d 100, 105, 483 N.Y.S.2d 375, 380 (N.Y. App. Div. 2d Dep't 1984)

(Rubin, J., dissenting); *see also Rubinfeld v. Mappa*, 24 A.D.2d 489, 489, 261 N.Y.S.2d 274, 274

(N.Y. App. Div. 2d Dep't 1965) ("The intervening rights of subsequent innocent purchasers for

value renders moot the remedy afforded by a *lis pendens*.").

A properly filed and indexed notice of pendency is not required, though, to bind a

subsequent purchaser who takes title with "actual knowledge" of a foreclosure proceeding. *See*

*Upper E. Side Cmty. Dev. Corp. v. New York City Div. of Real Prop.*, 186 A.D.2d 383, 383, 588

N.Y.S.2d 176, 177 (N.Y. App. Div. 1st Dep't 1992) ("[A]ctual notice of the pendency of the

foreclosure proceeding suffices to meet the requirements of due process."). Absent proof of such

actual notice by a plaintiff, the general rule remains that a purchaser who takes title without

either constructive or actual notice of pending claims is not bound to any judgment rendered on

those claims. *See Simone v. Heidelberg*, 877 N.E.2d 1288, 1290 (N.Y. 2007) ("A grantor may

effectively extinguish or terminate an encumbrance when the grantor conveys . . . land to a bona

fide purchaser who takes title without actual or constructive notice of the covenant . . . .").

In this case, no one argues that RL filed an effective notice of pendency when the case

began. *See, e.g.*, Def. Facts ¶¶ 1-2. Indeed, both Parties agree that the first effective notice of

pendency was the "Amended Notice of Pendency" that RL filed, and that was indexed, on July 2, 2020—after the transfer of the property to CPP was completed. *See* Pl. Br. at 14-15; Pl. Facts ¶ 35; Def. Facts ¶ 6. CPP took title to the property on March 3, 2020, and the transfer was recorded with the county clerk. Pl. Facts ¶ 31. As a result, CPP did not have constructive notice of this action and cannot be bound by a foreclosure judgment in this action.

RL attempts to rescue its claims through a narrow reading of section 1331 of the New York Real Property Actions and Proceedings Law. That statute provides:

> The plaintiff, at least twenty days before a final judgment directing a sale is rendered, shall file in the clerk's office of each county where the mortgaged property is situated a notice of the pendency of the action, which shall specify, in addition to other particulars required by law, the date of the mortgage, the parties thereto and the time and place of recording.

N.Y. R.P.A.P.L. § 1331. Notwithstanding the law recited above, RL argues that the plain text of this provision in isolation indicates that a notice of pendency is effective and presents no bar to judgment against any and all Defendants as long as it is filed at least twenty days before a final judgment and meets the other requirements in Section 1331. *See* Pl. Br. at 14-16.

RL clearly misreads Section 1331 and other provisions related to notices of pendency. The Court must interpret section 1331 in light of the overall statutory scheme concerning notices of pendency. *Bechtel v. Competitive Techs., Inc.*, 448 F.3d 469, 471 (2d Cir. 2006) ("'We must interpret a specific provision in a way that renders it consistent with the tenor and structure of the whole act or statutory scheme of which it is a part.'" (quoting *United States v. Pacheco*, 225 F.3d 148, 154 (2d Cir. 2000) (internal quotation and alteration omitted))). In light of the other provisions of New York law outlined previously, the best interpretation of section 1331 is that it sets a floor for the minimum amount of time that must pass between the filing of the notice of pendency and a final judgment in a foreclosure action, but does not alter the other substantive requirements under New York law for filing and indexing the notice against the property.

23

Moreover, this statute does not provide that a later-filed notice of pendency retroactively constitutes notice to bona fide purchasers who otherwise had none, as RL would have the Court do here.  This interpretation is consistent with both the language of section 1331 and unequivocal and uniform statements by New York courts that a notice of pendency provides no constructive notice until effectively filed and recorded.  *See, e.g.*, *Del Pozo*, 95 A.D.3d at 1265.  The Court also is compelled to read the statute in this way in order to effectuate the New York courts' command that parties strictly must comply with all of the requirements for notices of pendency. *Matter of Sakow*, 97 N.Y.2d 436, 441 (2002).

In short, RL's filing of an "Amended Notice of Pendency" in July 2020 did nothing more than alert prospective purchasers of the pendency of this proceeding.  Because the notice of pendency was filed and indexed after title had transferred to CPP, and after that transfer was recorded, the notice does not impact CPP's defenses here in any way.  Moreover, after a full opportunity for discovery in this case, RL did not argue or, indeed, assert any facts suggesting that CPP or its agents had actual knowledge of this action before purchasing the property, a circumstance which, if borne out by evidence, may have altered the analysis.  *See Upper E. Side Cmty. Dev. Corp.*, 186 A.D.2d at 383.  Had RL come forward with evidence demonstrating that CPP had actual notice of this action before taking an interest in the Property, it may well have been able to bind CPP to this action.  But the late-filed notice of pendency does not do so. [7]

---

[7] Additionally, RL's "Amended Notice of Pendency" may fail here for another unrelated reason.  In the Notice [ECF No. 192], RL names Ender, her family, and the other Defendants in the Amended Complaint.  However, the "Amended Notice of Pendency" does not name CPP.  Rule 6511(b) of the New York Civil Practice Laws and Rules provides that "[a] notice of pendency shall state the names of the parties to the action."  N.Y. C.P.L.R. Rule 6511(b). RL's "Amended Notice" does not name CPP, the current title-holder of the Property, and RL has made no motion to amend the "Amended Notice."  *See Beltway Capital, LLC v. Gutierrez*, 140 A.D.3d 998, 999, 35 N.Y.S.3d 164, 165 (N.Y. App. Div. 2d Dep't 2016) (granting motion to amend a notice of pendency); *LGD Assocs. V. Hastingwood Trading, Ltd.*, 220 A.D.2d 350, 350, 632 N.Y.S.2d 573, 573 (N.Y. App. Div. 1st Dep't 1995) (same).  Nor has RL sought to file a successive notice of pendency naming CPP.  *See* N.Y. C.P.L.R. § 6516 (permitting successive notices of pendency in certain circumstances).  Because however, "absolute conformity with CPLR content provisos

The cases RL cites provide no support for its reading of the law.  First, RL relies on cases in which "successive notices of pendency" were filed.  *See* Pl. Br. at 15 (citing *Bank of America v. Kennedy*, 97 N.Y.S.3d 751 (N.Y. App. Div. 3d Dep't 2019)).  RL quotes that "successive notices of pendency may be filed for the purpose of prosecuting a case to final judgment."  Pl. Br. at 16 (quoting *Slutsky v. Blooming Grove Inn, Inc.*, 542 N.Y.S.2d 721, 723 (N.Y. App. Div. 2d Dep't 1989).  These cases are inapposite, however, because here only one notice of pendency was indexed against the Property, and it came after CPP took title to the Property.

It is true that RL filed on the ECF docket in this case a "Notice of Pendency" at the onset of this litigation.  *See* Notice of Pendency, ECF No. 9.  That purported notice was never filed in the New York County clerk's office or indexed against the Property so as to constitute effective notice of this proceeding.  RL cannot rely on a "successive" notice argument when the original notice of pendency was not effective.  *See* N.Y. C.P.L.R. § 6516 (successive notice of pendency are not permitted if the first notice is "ineffective").  Because there is no dispute that the "Notice" filed with the original complaint never was indexed against the Property, it was not effective, and, thus, cannot provide any constructive notice to CPP.[8]  *See Del Pozo*, 95 A.D.3d at 1265 ("An error in indexing a notice of pendency prevents a record of that instrument from constituting constructive notice from the time that the notice of pendency is filed through the period that the indexing error remains uncorrected.").   RL's claim in this case does not fail because of a successive notice, but instead because of the longer than one year delay in *properly filing and indexing any notice of pendency* after commencing this foreclosure action.  RL's own

---

is not required," *see* Bergman § 15.03, the Court does not consider this question or base this decision on the potential deficiency.

[8] Earlier in this litigation, RL pressed the argument that this document was an effective notice of pendency under N.Y. C.P.L.R. § 6501.  *See* Memorandum of Law in Further Support of Motion for Default Judgment, ECF No. 194, at 4.  RL apparently has abandoned this argument, as it does not appear in RL's summary judgment submissions.

failure to file and index an earlier notice of pendency which would have put CPP on notice of this action is fatal.

RL also attempts to distinguish persuasive New York authority, *Del Pozo v. Impressive Homes, Inc*, cited by CPP.  RL argues that *Del Pozo* is distinguishable because in that case a notice of pendency was never indexed and because that case was seeking specific performance of a sale contract and not foreclosure.  *See* Pl. Br. at16-17.  *Del Pozo*, however, is analogous to this case and compels the conclusion that RL's late-filed notice of pendency cannot make CPP bound to this action.  The distinctions RL draws are insufficient to change the clear law.

In *Del Pozo*, the plaintiff sought specific performance of a contract for the sale of property.  95 A.D.3d at 1264.  When defendant Impressive Homes, Inc. defaulted on the contract, the plaintiff filed his complaint and contemporaneously filed a notice of pendency with the county clerk.  *Id.*  Due to a clerical error, the notice of pendency was never indexed against the property in question, and, subsequently, while the case was pending, Impressive Homes sold the property to another purchaser.  *Id.*  The New York Supreme Court granted, and the Appellate Division affirmed, summary judgment to the later purchasers because they bought the property without constructive knowledge of the pending action.  *Id.* at 1265.  As in *Del Pozo*, Ender sold the property here during the pendency of the litigation to a purchaser [CPP] who bought without constructive knowledge of the case (due to RL's failure to file a notice of pendency).  Thus, the same result as in *Del Pozo* is warranted.

Given that RL never filed with the New York County clerk and indexed against the Property a notice of pendency at the onset of this case, or at any time before CPP purchased the Property, title passed to CPP without notice of this action.  Therefore, CPP, the owner of the Property, cannot be affected by the outcome of this action.  The Court therefore grants CPP's motion for summary judgment to dismiss the Amended Complaint as against it on these grounds.

### E.      *Effect of this Decision on the Parties*

RL also has moved for summary judgment against all Defendants other than CPP, based on the defaults of Defendants Ender, Silberman, Laing, and the NYCDF, and the other Defendants' consents to judgment against them. *See supra* at 4. The Court will not enter judgment against these Parties before dismissing this case.

The Court herein holds that RL's failure to timely and effectively file and index a notice of pendency means that CPP must be dismissed from this case and will not be bound by any judgment. As the current owner of the Property, CPP is a necessary party to this action. *See* N.Y. C.P.L.R. § 1311; Bergman § 12.09 (collecting cases); *see also* Fed. R. Civ. P. 19. Even if CPP cannot be bound by the judgment because of RL's failure properly to file and index a notice of pendency, the Court could still order that a foreclosure sale be conducted. The purchaser at any such sale could not obtain title to the Property, however, but instead would become an assignee of the Mortgage, which remains on the Property. *See* Bergman § 12.09 (first citing *Robinson v. Ryan*, 25 N.Y. 320 (1862), and then citing *Seaman's Bank for Savings in the City of N.Y. v. Potash*, N.Y.L.J., Mar. 2, 1970, at 29, col. 4 (Sup. Ct. Queens Co., Leahy, J.)); *see also Polish Nat'l All. of Brooklyn v. White Eagle Hall Co., Inc.*, 98 A.D.2d 400, 406, 470 N.Y.S.2d 642, 648 (N.Y. App. Div. 2d Dep't 1983) ("The absence of a necessary party in a mortgage foreclosure action simply leaves that party's rights unaffected by the judgment of foreclosure and sale[.]" (internal citations omitted)). In other words, if the notice of pendency issues were the only basis for judgment against RL, the foreclosure sale could proceed as described here.

However, the Court also has concluded that RL has not established, as it must, that the Court has subject matter jurisdiction over this case. As a result, the Court has no authority to issue any judgment for RL or to order that a foreclosure sale occur. *Lightfoot v. Cendant Mortg. Corp.*, __ U.S. __, 137 S. Ct. 553, 560 (2017) ("[A] court's subject-matter jurisdiction defines its

power to hear cases." (citing *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 89 (1998) (Subject-matter jurisdiction is "the courts' statutory or constitutional power to adjudicate the case"))).  As a result, the Court has no authority to enter judgment against any of the defaulting or consenting Defendants and the case must be dismissed in its entirety.

The Court notes that since CPP admittedly took title with knowledge of the Mortgage, CPP may be liable for the amounts due under the Mortgage.  Some of the remaining Defendants also may be liable for the balance due on the loan made to Ender and other damages.  RL does not seek damages for breach of the loan agreement here, but seeks foreclosure as the remedy on its claim.  Since it lacks subject matter jurisdiction, this Court cannot grant such relief.  RL may be able to seek foreclosure in a new action, consistent with New York law and in a Court with jurisdiction to entertain the foreclosure claim.

### F.    *Motions for Sanctions*

Each of CPP and RL filed a motion for sanctions against the other, essentially accusing the other of making frivolous arguments and prolonging the case.  *See* RL Motion for Sanctions, ECF No. 237 ("RL Sanctions Br."), at 11-20; CPP Cross-Motion for Sanctions and Opposition to RL Motion, ECF No. 245 ("CPP Sanctions Br."), at 15-17.  In this case, the Court sees no reason to sanction either party for its advocacy.  Indeed, there is likely some blame on both sides for the length of this case and the acrimony between the Parties.  While RL has pressed its case following the revelation that it never properly filed and indexed a notice of pendency, *see* CPP Sanctions Br. at 16, CPP also delayed in coming forward after its purchase of the Property (though when CPP learned about the case is unknown) and interposed several defenses that it thereafter entirely abandoned.  *See* RL Sanctions Br. at 14-18.  In sum, neither Party entirely is responsible for the delays in litigating this case and the Court declines to apportion or weigh fault and impose sanctions.

## CONCLUSION

For the reasons set forth herein, Plaintiff RL 900 Park, LLC's Motion for Summary Judgment is DENIED.  Intervenor-Defendant Central Park Partners NY LLC's Cross-Motion for Summary Judgment is GRANTED.  The Court holds that Plaintiff's failure adequately to allege subject matter jurisdiction must result in dismissal of the case.  Even if Plaintiff could cure the subject matter jurisdiction issues, however, its failure to file and index a notice of pendency before CPP took title to the Property means that the current title holder, CPP, cannot be bound by this foreclosure action and all claims against CPP must be dismissed.

The Clerk of Court respectfully is requested to terminate all open motions, to issue Judgment for Intervenor-Defendant Central Park Partners NY LLC and against Plaintiff RL 900 Park LLC, and to close the case.

**SO ORDERED.**

**Date: February 25, 2021**
**New York, New York**

**MARY KAY VYSKOCIL**
**United States District Judge**

29